760 A.2d 369

**Charles STEVENS**

v.

**WORKERS' COMPENSATION APPEAL BOARD
(CONSOLIDATION COAL COMPANY).**

**Appeal of Consolidation Coal Company.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1999.

Decided Oct. 24, 2000.

Michael W. Zimecki, Pittsburgh, for Consolidation Coal Co.

Lawrence R. Chaban, Washington, for Charles Stevens.

David Hawkins, Secretary; James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for WCAB.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

In this appeal, we revisit the issue of the appropriate burden of proof for claimants seeking to have their suspended workers' compensation benefits reinstated.

On April 15, 1980, Charles Stevens (Appellee) sustained a back injury while working for Consolidation Coal Company.

Stevens received workers' compensation benefits at a total disability rate of $242.00 per week. He underwent surgery for his injury, but was unable to return to his pre-injury job in the coal industry.

Stevens returned to school and obtained an associate's degree in corrections administration from the Community College of Allegheny County in 1991. He began work as a private investigator with Interstate Investigations after graduation. Stevens received partial disability benefits because his wages with Interstate did not exceed his average weekly wage with Consolidation Coal. After working there for three years, Stevens accepted a higher paying job with a different investigation firm, Becker & Company. When Stevens' earnings from the second company exceeded his pre-injury weekly wage, his workers' compensation benefits were suspended by a supplemental agreement dated July 14, 1994.

In October of 1994, Stevens was terminated from his employment with Becker & Company. Stevens filed a petition to reinstate workers' compensation benefits as of October 6, 1994. The petition stated that Stevens had suffered a total loss of earning power due to no fault of his own and requested that attorney fees be awarded on the basis of unreasonable contest by Consolidation Coal. Consolidation Coal responded to the reinstatement petition by asserting that Stevens' loss of earning power was attributable not to his previous injury but to his inability to perform investigative work up to the standards imposed by Becker & Company.

Stevens applied for and received unemployment compensation benefits after his employment with Becker & Company ended. He reapplied for his job at Interstate Investigations and was hired back on March 28, 1995. He continued to work for Interstate Investigations until he was laid off due to lack of work on March 10, 1996.

The reinstatement petition was granted by the workers' compensation judge on May 14, 1996. The WCJ determined that during the period of time between Stevens' termination from Becker & Company and his rehiring by Interstate Inves-

tigations, Stevens was not working through no fault of his own, while continuing to suffer residuals of his earlier work injury that restricted him to alternative employment. The WCJ accepted as credible the testimony of Stevens and Joseph Becker, president of Becker & Company, that Stevens had performed the job to the best of his ability, but simply was unable to meet the standards expected of him. The WCJ further concluded that Stevens had continued restrictions stemming from his work-related injury which prohibited his return to work with Consolidation Coal. Stevens was awarded total disability benefits for the period from October 6, 1994 through March 27, 1995. For the period Stevens was re-employed by Interstate Investigations, the WCJ awarded partial disability benefits should the wage records demonstrate earnings lower than Stevens' average weekly wage at the time of injury.[1] The WCJ denied attorney fees, finding that Consolidation Coal had a reasonable basis to contest the reinstatement petition.

The Workers' Compensation Appeal Board affirmed the WCJ's decision on appeal. On December 29, 1997, Consolidation Coal filed a petition for rehearing before the Board, asserting that the Board had erred in affirming the WCJ's decision as there was no competent evidence of record that Stevens' injury was again affecting his ability to earn. On March 11, 1998, the Board granted the petition, finding that it had erred in applying a "misconduct standard" in affirming the WCJ's decision. In its opinion, the Board indicated that it was granting the petition for rehearing "for application of the correct standard of proof for a reinstatement, i.e. whether the current loss of earnings is related to the disability, as set forth in *Hertz–Penske [Truck Leasing Co. v. W.C.A.B. (Bowers) ]*, 546 Pa. 257, 684 A.2d 547 (1996)."

The Board concluded that Stevens had failed to meet the burden of proof required to be entitled to a reinstatement of benefits because he had failed to present evidence that his

---

1. Various adjustments were made by the WCJ to reflect credits owed to Consolidation Coal for Stevens' receipt of unemployment compensation benefits.

current loss of earnings was related to his original work injury of April 15, 1980. The Board observed that Stevens had conceded that there were no physical problems interfering with his ability to perform the duties of a private investigator. Having determined that Stevens' loss of earnings was attributable to his inability to meet the performance standards of his new employer rather than to his work injury, the Board reversed the WCJ's decision to reinstate the benefits.

The Commonwealth Court reversed the Board's decision. The court found that Stevens had met his burden to show that his earning power was adversely affected by his continuing disability through no fault of his own. The court emphasized that the WCJ had found that Stevens had physical restrictions rendering him unable to perform his pre-injury job and had also found that Stevens was not capable of performing the job of private investigator with Becker & Company although he had performed to the best of his abilities. The court concluded that Stevens had satisfied his burden of proof in seeking the reinstatement of total disability benefits, as articulated in *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990).

We granted Consolidation Coal's petition for allowance of appeal to address the applicable burden of proof for reinstatement of benefits where a claimant has not fully recovered from a work-related injury and has been terminated from employment with a different employer based upon unsatisfactory job performance.[2] Consolidation Coal asserts that when a claimant whose benefits have been suspended returns to work at

2. In articulating the issue raised on appeal, we recognize that there are innumerable factual circumstances that may arise in the re-employment context. We note at this juncture that we are not confronted with a reinstatement petition of a claimant who deliberately failed to meet his new employer's standards. As the WCJ found, Stevens worked diligently, but simply did not meet his new employer's expectations.

We further note that appellate review in workers' compensation proceedings is limited to determining whether constitutional rights have been violated, an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. *Volterano v. Workmen's Compensation Appeal Board*, 536 Pa. 335, 639 A.2d 453 (1994).

earnings equal to or greater than his pre-injury earnings and is subsequently terminated, the claimant must show that his loss of earnings was the result of the work injury. Consolidation Coal argues that Stevens failed to meet his burden of proof because there is no evidence that his earning power was adversely affected by his work injury. Stevens responds that the legal standard for reinstatement of benefits when a claimant continues to suffer residual effects of a work-related injury should not be restricted to a showing that the loss of a different or modified job was due to the injury. For the following reasons, we agree with Stevens' position.

Section 413 of the Workers' Compensation Act, 77 P.S. §§ 1–1041.4 which authorizes modification, reinstatement, suspension or termination of benefits, provides in relevant part

[t]hat where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to injury.

77 P.S. § 772.

The decision in *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990), provides the starting point for our discussion. The claimant sustained a lower back injury while employed by Ametek. He received temporary total disability benefits until he returned to work and executed a final receipt. The claimant later suffered a recurrence of his injury resulting in a reinstatement of benefits by supplemental agreement. Partial disability benefits were later paid to the claimant when he returned to work part-time and were terminated when he again returned full-time. The claimant worked full-time hours although he was unable to perform the required tasks of lifting heavy objects, prolonged bending, stretching, reaching and climbing ladders. Two days after his return, the claimant was laid off.

The claimant filed a petition for reinstatement of benefits, which was granted by the referee who found that claimant was totally and permanently disabled from doing his former job or similar types of work as a result of his work-related injury. Ametek appealed to the Board, asserting that the claimant failed to present unequivocal medical testimony to demonstrate the causal relationship between the work-related injury and his present disability. The Board affirmed, but was subsequently reversed by the Commonwealth Court upon a determination that the necessary finding of causation was not supported by substantial evidence. We reversed.

We observed that a claimant who seeks reinstatement of benefits bears a different burden of proof depending upon whether benefits have been terminated or suspended. A termination of benefits is supported by a finding that all disability related to a compensable injury has ceased. On the other hand, a suspension of benefits is supported by a finding that the claimant's earning power is no longer affected by his disability, whether it arises from the claimant obtaining suitable replacement employment through his employer or by the claimant securing other employment that provides equal or greater earnings. *Pieper,* 584 A.2d at 304.

In order for a claimant to have benefits reinstated after a termination of benefits, the claimant must establish a causal connection between his current condition and the prior work-related injury. The claimant must establish that his disability has increased or recurred after the date of the prior award and that his physical condition has actually changed in some manner. *Id.*

Where a claimant seeks a reinstatement of suspended benefits, however, no causal connection must be demonstrated. In that case the claimant must show only that while his disability has continued, his loss of earnings has recurred. In such suspension situations, the causal connection between the original work-related injury and the disability which gave rise to compensation is **presumed.** First, it is presumed because the causal connection between the original

work-related injury and disability was initially either not contested by the employer or established by competent proof by the employee at the time of the original disability claim. Second, it is presumed because with a mere suspension of benefits, there is no contention by any party that the liability of the employer has terminated. The only fact established at a suspension of benefits is that the **earning power** of a claimant has improved to a point where benefits are no longer necessary. Since the disability continues to exist, the liability of the employer for the injury has not terminated. Therefore, in these situations the causal connection between the original work-related injury and the disability goes unquestioned.

584 A.2d at 305 (emphasis supplied).

We recognized that because a significant period of time can elapse before a claimant applies for reinstatement of benefits due to financial changes, the law requires a claimant to demonstrate two things in order to show that the reasons for a suspension no longer exist. The claimant must demonstrate: (1) that his earning power is once again adversely affected by his disability through no fault of his own, and (2) that the disability which gave rise to his original claim continues. *Id.*

Applying this standard, we found that the claimant was entitled to reinstatement of his benefits. The claimant had demonstrated that his earning power was once again affected by his work-related injury because he was only able to maintain a part-time job as a bartender after he was laid off from Ametek.

Consolidation Coal seizes upon the phrase from *Pieper,* "through no fault of his own," as requiring that reinstatement of benefits be denied where a claimant is terminated from different employment based upon unsatisfactory job performance. The argument is made that in such case the loss of earning power is not attributable to the work-related injury. In this case, Consolidation Coal asserts that the evidence does not support the WCJ's finding that Stevens' loss of earning power was through no fault of his own. Stevens' loss of

earning power is claimed to be "his fault" because Stevens did not perform as expected.

While the judicial construct of "fault" lends itself to the interpretation offered by Consolidation Coal, it·was not an intended result. In setting forth the two-pronged burden placed upon a claimant seeking reinstatement of benefits in *Pieper*, we indicated that the fault concept was tied to the availability of work. In the accompanying footnote to the statement of the two-prong test, we stated:

> We note that such a recurrence of a claimant's loss of earnings must be through no fault of his own. An employer may rebut claimant's proof of loss of earnings by establishing the availability of work that claimant is capable of performing.

*Pieper*, 584 A.2d at 305, n. 8 (citations omitted).

Consolidation Coal cites our subsequent decisions in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), and *Monteson v. Workmen's Compensation Appeal Board (Trinity Industries)*, 545 Pa. 632, 682 A.2d 776 (1996), as support for its position. In *Harle*, the claimant had fractured his left thumb while employed as a pressman with Telegraph Press, Inc. The claimant received total disability payments pursuant to a notice of compensation payable. The claimant was released later by his treating physician to full duty without restrictions; however, Telegraph Press had ceased conducting business several months earlier. A termination petition was filed by Telegraph Press after claimant's release to work, asserting that the claimant's disability had ceased.

At the hearing, the claimant testified that he continued to experience wrist pain when performing heavy duties but had worked without incident at a ˙printing company at a lower hourly wage. His treating physician indicated that claimant continued to experience residual physical impairment from the injury, but should be able to perform a pressman's duties. The referee found the physician's testimony to be credible. The termination petition was granted on the basis that all

disability relative to the injury had ceased. The Board affirmed, but was reversed by the Commonwealth Court, which remanded for a determination of partial disability benefits.

The Commonwealth Court concluded that the evidence of claimant's residual impairment precluded a finding that the disability had entirely ceased. Having determined that termination was unsupported by the evidence, the court reviewed whether the suspension of benefits would be appropriate under the circumstances. The court observed that suspension of benefits is proper where a claimant can return to his pre-injury position, but continues to suffer residual impairment because the medical disability is not manifested in a loss of earnings. Where the pre-injury position is not available, however, suspension of benefits is unwarranted because the employer has not demonstrated job availability. The court found that modification of benefits to partial disability was appropriate because claimant's pre-injury position was unavailable and a lower paying position had been obtained elsewhere.

We vacated the Commonwealth Court's order to the extent that it remanded for the calculation of partial disability benefits. Based upon claimant's testimony that he was employed full-time and had not lost any work time due to the injury, we found that any difference between the claimant's pre-injury wages and post-injury earning power was due to factors other than the injury. The close of the employer's business made claimant's return to his pre-injury position impossible. We agreed with Commonwealth Court, however, that suspension of benefits was warranted rather than termination because the claimant experienced residual physical impairment from the injury. Should the claimant's earning power be affected in the future by the residual impairment, the claimant could seek reinstatement of benefits under *Pieper*.

*Monteson* also involved a claimant who was released by his treating physician to his pre-injury position. The claimant executed a final receipt, but was subsequently laid off along with other workers with similar seniority. The claimant received unemployment compensation benefits during the layoff.

The employer later offered claimant his pre-injury job, which the claimant declined because he had accepted a position as a car salesman.

The claimant was fired from the sales position two weeks later due to his failure to sell cars. A petition to set aside the final receipt was filed, alleging that claimant had not fully recovered from his work-related injury. The referee granted the petition, finding that claimant had not fully recovered from his injury when the receipt was signed, but determined that the employer was entitled to a suspension of benefits because it had proven that claimant voluntarily refused to accept its offer of employment for reasons unrelated to his work-related injury. The suspension of benefits was upheld by the Board and the Commonwealth Court.

We affirmed, rejecting the claimant's argument that he had satisfied his burden under *Pieper* by establishing that through no fault of his own his employment as a car salesman was terminated. The claimant asserted that his refusal of his original employer's offer of his pre-injury position was not based on bad faith but was the result of his fear of reinjuring himself and his desire to continue a career as a car salesman. We refused to apply a good faith/bad faith analysis in determining whether the claimant had a reason for declining the offer of employment by his original employer. Rather than focusing on the merits of claimant's reason for refusing to return to his pre-injury job, we emphasized the claimant's failure to establish that his earning power was adversely affected by his injury through no fault of his own. We noted that "[c]laimant's loss of earnings did not result from his work injury but rather was due to the fact that he obtained alternative employment from which he was terminated." 682 A.2d at 778.

This case is distinguishable from *Harle* and *Monteson* because the WCJ specifically found that Stevens had continued restrictions related to his work-related injury that prohibited his return to work with Consolidation Coal. Once alternative employment as a private investigator was no longer available to him, Stevens' earning power was once again adversely

affected by his injury. Although Consolidation Coal continued to do business, Stevens could not perform his pre-injury work.

In *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999), we addressed the issue of under what circumstances workers' compensation benefits may be terminated based upon a claimant's involuntary discharge from employment.[3] The claimant, who was employed as a bathroom attendant in a hotel housekeeping department, sustained a head injury in 1989. She received benefits pursuant to a notice of compensation payable. The employer subsequently filed a petition for suspension or termination of benefits, alleging that the claimant had returned to work at wages equal to or greater than her pre-injury wages and suffered no residual disability. A second claim petition was filed by the claimant for a separate head injury sustained thereafter. The matters were consolidated for review by the WCJ.

Prior to the conclusion of the hearings, the claimant injured her back at work. She was examined at a hospital and released. When the claimant failed to report to work as scheduled for the next two days and did not report the reason for her absence, she was fired. The WCJ awarded total disability benefits to the claimant, finding that claimant had established a residual disability and the unavailability of suitable employment. The decision was affirmed by the Board and the Commonwealth Court. We remanded for a recalculation of benefits consistent with the opinion.

We noted that the claimant had met her burden in the proceeding on the claim petition of establishing a work-related injury rendering her incapable of performing her time-of-injury job. The employer argued that the claimant's loss of earnings was not related to the work injury, but was a result of the claimant's failure to comply with the employer's policy regarding procedures for reporting absences from work. The employer argued that suspension of workers' compensation benefits is appropriate whenever an employee has been termi-

---

**3.** The decision in *Vista* was entered after the argument by the parties in this case.

nated from employment without regard for the grounds of termination.

We rejected the employer's approach as overbroad, finding it more appropriate to consider the circumstances giving rise to the termination of employment.

Where a claimant establishes that a work-related injury prevents a return to the time-of-injury job, a loss of earnings capacity is established. Once such a loss has been demonstrated, the claimant should generally be entitled to benefits, unless the employer can demonstrate that employment is available within the claimant's restrictions. Consistent with the purposes of the Act, as well as our decisional law and the decisions of the Commonwealth Court *as a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity.*

742 A.2d at 657 (citations omitted) (emphasis added).

We reasoned that "[i]n addition to requiring the factfinder to consider the impact of the work-related injury as part of the benefits assessment, this approach has the advantage of also permitting consideration of the claimant's good or bad faith in connection with the termination, since fault-based considerations traditionally have been deemed relevant in determining whether the employer has met its burden of establishing job availability." 742 A.2d at 657 (citation omitted). Where a claimant forfeits his employment in bad faith, the claimant would be ineligible for total disability benefits because suitable employment was available but for the claimant's own wrongful conduct. *Id.* at 658. "Whether the ... claimant may receive total disability benefits depends upon whether the employer can demonstrate that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of the discharge to the claimant, such as claimant's lack of good faith." *Id.* at 658 (citation and footnote omitted).

■ It is undisputed that Stevens' termination from the private investigation firm was not due to the lack of good faith in Stevens' efforts to perform the job; nor is there any question that Stevens' work-related injury prevented him from returning to his prior job with Consolidation Coal. Stevens met his burden of proof under *Pieper* to establish that his work-related injury continues and that his earning power was once again adversely affected by his injury through no fault of his own. In the absence of any evidence of available employment that Stevens was capable of performing pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the reinstatement of benefits was proper.

The order of the Commonwealth Court is affirmed.

Justice SAYLOR files a concurring opinion in which Justices CAPPY and CASTILLE join.

SAYLOR, Justice, concurring.

The majority reaffirms the standard for reinstatement of benefits announced in *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990), requiring a workers' compensation claimant to establish: (1) that his earning power is once again adversely affected by his disability through no fault of his own; and (2) that the disability giving rise to his original claim continues. *Id.* at 34, 584 A.2d at 305. According to the majority, this formulation allocates the burden of proof concerning a claimant's good faith in connection with the determination of job availability to the claimant in the first instance in the reinstatement context. Notably, however, such burden is allocated to the employer in connection with its burden of demonstrating job availability in all other contexts, including claim, modification and suspension proceedings. *See generally Vista Int'l Hotel v. WCAB (Daniels)*, 560 Pa. 12, 22 & n. 7, 27–28 & n. 11, 742 A.2d 649, 654 & n. 7, 657–58 & n. 11 (1999). The reasoning underlying the decision to shift the burden to the claimant in the reinstatement context is not well developed in our decisional law and

adds a layer of complexity to the workers' compensation scheme that is, in my view, unnecessary. Instead, I would find it preferable to maintain the allocation of the initial burden of proof connected with job availability to the employer in the reinstatement context, as this would establish a clear, consistent rule for workers' compensation jurisprudence. *See generally Vista,* 560 Pa. at 28 n. 11, 742 A.2d at 658 n. 11 (stating that "where the claimant has established that a work-related injury is the cause of a loss in earnings capacity (or remains so) during the time period in issue, the employer will generally be charged with the initial burden of establishing job availability for that time period"). Such allocation is fundamentally fair, since " 'it is easier for the [employer] to prove [job availability] than for the claimant to prove [non-availability],' " *Vista,* 560 Pa. at 22 n. 7, 742 A.2d at 654 n. 7 (quoting *Petrone v. Moffat Coal Co.,* 427 Pa. 5, 12, 233 A.2d 891, 895 (1967)), and once an employer satisfies this initial burden, the burden shifts in all contexts to the claimant to demonstrate his good faith efforts in connection with job performance or referrals. *See generally Kachinski v. WCAB (Vepco Constr. Co.),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987). Further, this allocation is consistent with the General Assembly's provision for reinstatement of suspended benefits "at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to injury." 77 P.S. § 772.[1] While I recognize that the Court in *Pieper* added the "no fault of his own" requirement to the claimant's burden in seeking reinstatement of suspended benefits, I would read such requirement more narrowly than the majority, as reflecting only the enactments and related decisions implicating policy concerns which militate against the award (or reinstatement) of benefits, such as those identified in Section 301(a) of the Act, 77 P.S. § 431 (precluding compensation for intentionally self-inflicted inju-

---

**1.** The phrase "unless it can be shown" logically should implicate the employer's burden, since claimants would have no reason to show that their loss in earnings is unrelated to the work injury.

ries, as well as injuries caused by a violation of law on the part of the claimant).

In all other respects, I join the majority opinion.

Justice CAPPY and Justice CASTILLE join this concurring opinion.