Anne CRYDER, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (NATIONAL
CITY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 7, 2003.

Decided June 23, 2003.

Reargument Denied Aug. 13, 2003.

James E. Douglas, Hermitage, for peti-
tioner.

Michael A. Rynn, Pittsburgh, for re-
spondent.

Before PELLEGRINI, J., COHN, J.,
and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Anne Cryder (Claimant) petitions for re-
view of the order of the Workers' Compen-
sation Appeal Board (Board) affirming the
decision of the Workers' Compensation
Judge (WCJ) denying her reinstatement
petition.

On December 8, 1997, Claimant sus-
tained a work-related injury to her back
while working as a residential mortgage
representative for National City Corpora-
tion (Employer). Employer issued a no-
tice of compensation payable acknowl-
edging her injury which was described as
"low back pain" and began paying Claim-
ant compensation benefits. Pursuant to a
notification of suspension or modification
dated December 23, 1997, Claimant's com-
pensation benefits were suspended effec-

tive December 18, 1997, as a result of her return to work at no loss of earnings.

Claimant then filed a reinstatement petition, indicating a date of injury as January 22, 1998, alleging that her disability had again caused a loss of wages.[1] On March 18, 1999, Employer filed an answer denying these allegations.

Before the WCJ, Claimant testified that she was a residential mortgage representative for Employer. She stated that she injured her neck, shoulders and lower back on December 8, 1997, when, after a change in her job, she was required to carry a laptop computer and had carried it for a week. She stated that she sustained a second work-related injury on January 22, 1998, when a person backed his car into her car and pushed the car into her as she was walking behind it. Following both injuries she was examined by Charles H. Ziegler, D.O., M.P.H. (Dr. Ziegler), who released her to work with restrictions that she should not lift or carry anything over ten pounds and engage in no repetitive bending, twisting or turning. When she was terminated in March of 1998, those restrictions still applied. As to her termination, she stated that she did not remember ever having a discussion with her supervisor regarding poor work performance, but she remembered her paper saying that certain number volume totals needed to be met and those numbers were not met. She stated that after she was terminated, she received unemployment compensation benefits.

Claimant also offered the deposition testimony of Anita Primavera (Primavera), Employer's Assistant Vice–President of Residential Lending. She testified that she was Claimant's direct supervisor when Claimant was hired as a mortgage loan originator in the summer of 1995. She stated that she ceased her role as Claimant's supervisor in 1997, when shortly after the merger of Integra into National City, Claimant was transferred from Ohio to the Greenville market area in Mercer County, Pennsylvania, and her mortgage quotas were increased from five million to eight million per year. She stated that Claimant had experienced difficulties in the Greenville market area and was given assistance to help reach established production goals. Primavera testified that she was satisfied with Claimant's general performance; however, as of the end of May 1997, Claimant was failing to meet her goals.

Also in support of her reinstatement petition, Claimant offered the deposition testimony of Dr. Ziegler, board-certified in occupational medicine. Dr. Ziegler testified that he first saw Claimant on December 17, 1997, when she provided a history of gradually increasing pain from carrying a laptop computer. Based on Claimant's medical history and his examination of her, Dr. Ziegler opined that she suffered from dorsal/lumbar myositis and myofascial strain and that her condition was caused by her repeatedly carrying 25 pounds of equipment at work which exacerbated her pre-existing condition of fibromyalgia. Dr. Ziegler stated that he released Claimant to return to work but placed restrictions on her work, including a lifting restriction of nothing over ten pounds and no repetitive bending, twisting or lifting. He also testified that he saw Claimant again on January 22, 1998, after she suffered injury as a result of being knocked to the ground as a car drifted back and hit her as she was walking behind the vehicle. He stated that following an examination, he released

1. Claimant's reinstatement petition was dated December 22, 1998; however, there was no date stamp from the Department of Labor and Industry, Bureau of Workers' Compensation to indicate the actual date the petition was filed.

Claimant to work under the same restrictions as before. He opined that Claimant would probably continue to have some problems, especially due to her history of fibromyalgia, but that she would most likely be able to function relatively normally. He stated that due to her condition, the restrictions he placed on her would have to be maintained to prevent further acute flare-ups.

In opposition to Claimant's reinstatement petition, Employer offered the deposition testimony of Holly Merriman (Merriman), its former Human Resources Consultant. Merriman testified that she terminated Claimant's employment with Employer on March 24, 1998, for her failure to meet loan production and loan closing goals. She stated that Employer had a policy of progressive discipline for performance-related problems, and Claimant was involved in the first step, verbal discussion between supervisor and employee, on November 19, 1997. Due to Claimant's failure to meet performance goals, Merriman stated that she was placed on formal, written discipline on January 12, 1998, and was terminated on March 24, 1998, when her production failed to improve.[2] Merriman stated that for 1997, Claimant's actual loan production was 3.3 million dollars shy of her production goal and her actual loan closings were 2.5 million dollars short of her eight million dollar goal.

Employer also offered the deposition testimony of Richard Kozakiewicz, M.D. (Dr. Kozakiewicz), a board-certified physiatrist. Dr. Kozakiewicz testified that he evaluated Claimant on September 21, 1999. He stated that after obtaining Claimant's medical history, reviewing her medical records and conducting a physical examination, he opined that Claimant had fully recovered from her work-related injury as of that date, and that she had returned to her pre-injury baseline condition and recommended that she continue to perform her program for her baseline fibromyalgia. He stated that the findings of his physical examination of Claimant were very mild and were consistent with a diagnosis of fibromyalgia, given her medical history. Dr. Kozakiewicz stated that Claimant was medically capable of performing her duties as a residential mortgage representative which he described as largely sedentary, with, at times, lifting amounts that approximated light-duty weights.

Finding that Claimant was terminated from her employment with Employer for failure to meet production goals, that any loss of earnings Claimant sustained on or after March 24, 1998, were not causally related to her work-related injury, and that Claimant had fully recovered from her January 22, 1998 work-related injury as of September 21, 1999, the WCJ denied Claimant's reinstatement petition. Claimant then appealed that determination to the Board which affirmed the WCJ's deni-

2. The employment termination form dated March 24, 1998, states:

Anne Cryder is being terminated due to not meeting the loan origination and loan closing goals established by management. The established goal was a minimum of $680,000.00 loan originations per month. And loan closings of $500,000.00 per month. These goals were not met in 1997 nor have they been achieved during her warning notice, written notice and probationary notice.

The actual $ amounts for her loan originations [and] closing are attached.

(Defendant's Exhibit 2 attached to September 25, 2000 Deposition Transcript of Holly Merriman.) The employment termination form was signed and dated by Claimant, Rebecca S. Lierman, as Claimant's Supervisor, Phillip R. Lavelle, as the Next Level Management, and Merriman, as the Personnel Services Manager.

al of her reinstatement petition. This appeal followed.[3]

■ Claimant contends that she was entitled to reinstatement of benefits because she was not required to establish that her work-related injury worsened such that she could no longer perform the job she had at the time of discharge as the Board concluded; but instead, she was only required to establish that through no fault of her own, her earning capacity had been once again adversely affected by her disability. She also argues that because the WCJ did not find that she had fully recovered until September 21, 1999, the date Dr. Kozakiewicz testified that she had fully recovered from her work-related injury, she was entitled to a closed-period of benefits from March 24, 1998, until that date.

A claimant's burden of proof when seeking reinstatement of benefits was enunciated by our Supreme Court in *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). It held that a claimant seeking reinstatement of compensation benefits following a suspension must establish that (1) through no fault of his or her own, the claimant's disability, i.e., earning power is once again adversely affected by her disability, and (2) the disability which gave rise to the original claim continues.

■ In *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Company)*, 563 Pa. 297, 760 A.2d 369 (2000), our Supreme Court discussed the meaning behind the phrase "through no fault of his own," in *Pieper*, stating:

Consolidation Coal seizes upon the phrase from Pieper, "through no fault of

his own," as requiring that reinstatement of benefits be denied where a claimant is terminated from different employment based upon unsatisfactory job performance. The argument is made that in such case the loss of earning power is not attributable to the work-related injury. In this case, Consolidation Coal asserts that the evidence does not support the WCJ's finding that Stevens' loss of earning power was through no fault of his own. Stevens' loss of earning power is claimed to be "his fault" because Stevens did not perform as expected.

While the judicial construct of "fault" lends itself to the interpretation offered by Consolidation Coal, it was not an intended result. In setting forth the two-pronged burden placed upon a claimant seeking reinstatement of benefits in *Pieper*, we indicated that the fault concept was tied to the availability of work. In the accompanying footnote to the statement of the two-prong test, we stated:

We note that such a recurrence of a claimant's loss of earnings must be through no fault of his own. An employer may rebut claimant's proof of loss of earnings by establishing the availability of work that claimant is capable of performing.

563 Pa. at 305–6, 760 A.2d at 374 (citation omitted). The Court goes on to conclude that, in effect, to determine whether a claimant may receive benefits "depends upon whether the employer can demonstrate that suitable work was available or would have been available but for circumstances which merit allocation of the con-

---

3. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact are supported by

substantial evidence. *Pruitt v. Workmen's Compensation Appeal Board (Lighthouse Rehabilitation)*, 730 A.2d 1025 (Pa.Cmwlth. 1999).

sequences of the discharge to the claimant, such as claimant's lack of good faith." *Stevens,* 563 Pa. at 310, 760 A.2d at 377 (citing *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels),* 560 Pa. 12, 28, 742 A.2d 649, 658 (1999)).[4] Under the Court's analysis then, in order to find that a claimant failed to establish his or her burden that through no fault of his or her own, the claimant's disability is once again adversely affected by his or her disability, the employer must establish that the circumstances of the claimant's termination from his or her employment rose to the level of bad faith.

In this case, there was no allegation of bad faith on the part of Claimant with regard to the reason for her termination and no allegation of misconduct, absenteeism or other work conduct that rose to the level of bad faith. To the contrary, Primavera, who the WCJ found credible, testified that Claimant's review records included a comment by her which stated "Anne is a great team player, very willing to be of assistance as needed, always puts above 100–percent effort into her everyday duties. When I am out of the office, Anne is very capable of handling my job and her own." (Deposition Testimony of Anita Primavera dated February 26, 2001, at 20.) No evidence was presented that Claimant failed to act in good faith in carrying out the duties of her job; instead, Employer merely alleged that it terminated Claimant because she failed by "not meeting the loan origination and loan closing goals established by management." (Employment Termination Form dated March 24, 1998.) Because the reason for Claimant's termination could in no way be characterized as bad faith on her part in the carrying out of her duties, we cannot say that her earning power was adversely affected through any fault of hers, and, therefore, Claimant established her burden under the first prong of the *Pieper* test. Because the WCJ concluded that she was fully recovered as of September 21, 1999,[5] Claimant was entitled to compensation benefits for the closed period from March 28, 1998, the date she was terminated until that date.

Accordingly, the decision of the Board is reversed.

### ORDER

AND NOW, this *23rd* day of *June,* 2003, the order of the Workers' Compensation Appeal Board, No. A01–3242, dated October 2, 2002, is reversed.

## CONCURRING OPINION BY Judge COHN.

I write separately because I disagree with the majority's discussion, in dicta, of the phrase "no fault of his own." The majority correctly states that the Supreme Court, in *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.),* 563 Pa. 297, 310, 760 A.2d 369, 377 (2000), concluded that the test to determine whether a claimant may receive benefits "depends upon whether the employer can demonstrate that suitable work was available or would have been available but

4. While we acknowledge that factual differences exist between *Stevens* and the present case, we believe that our Supreme Court's analysis regarding the appropriate application of the phrase "through no fault of his own" as that term is used in *Pieper* is equally applicable to all cases involving a claimant seeking reinstatement of benefits who are required to establish that (1) through no fault of his or her own, the claimant's disability, i.e., earning power is once again adversely affected by his or her disability and (2) the disability which gave rise to the original claim continues as was set forth in *Pieper.*

5. We note that Employer did not allege either before the WCJ or the Board that Claimant's work-related physical disability terminated prior to September 21, 1999.

for circumstances which merit allocation of the consequences of the discharge to the claimant, *such as* claimant's lack of good faith." (*quoting Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 29, 742 A.2d 649, 658 (1999.))

From this analysis, the majority opinion, in the case *sub judice*, jumps to the conclusion that "in order to find that a claimant failed to establish his or her burden through no fault of his or her own ... the employer must establish that the circumstances of the claimant's termination from his or her employment rose to the level of bad faith." The majority, thus, seemingly requires evidence of a claimant's *bad faith in every case.*

There is no evidence of Claimant's lack of good faith in the case at bar; she apparently performed to the extent of her capabilities, but was unable to meet Employer's standards. Therefore, under *Stevens,* the consequences of the discharge could not be allocated to Claimant. It is not necessary for the majority to go any farther.

While I agree that a claimant's bad faith is clearly *one* type of circumstance that would prevent reinstatement of benefits, I do not believe that the Court intended it to be the *only* circumstance. There would be no reason for the Court's use of the phrase "such as" in its articulation of the test if it intended the lack of good faith to be the "only" circumstance that could preclude reinstatement. The Supreme Court specifically leaves open the possibility that a circumstance *other* than a claimant's lack of good faith could warrant allocating the consequences of a discharge to him or her. I, thus, disagree with the majority to the extent that it unnecessarily attempts to foreclose that possibility.