**Karen VERITY, Petitioner**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (The MALVERN
SCHOOL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 10, 2011.
Decided Oct. 11, 2011.
Publication Ordered Jan. 9, 2012.

Thomas More Holland, Philadelphia, for petitioner.

J. Brendan O'Brien and Glenn B. Raiczyk, Philadelphia, for respondent the Malvern School.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Karen Verity (Claimant) petitions for review of the February 28, 2011 Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision denying Claimant's Reinstatement Petition. On appeal, Claimant argues that the WCJ used the incorrect standard of proof in denying the Reinstatement Petition and

that the Board erred in holding that Claimant "voluntarily" left her light-duty position.

Claimant sustained a work-related injury on September 19, 2007, while employed by The Malvern School (Employer) as a teacher. (WCJ Decision, April 27, 2009 (WCJ Decision) Findings of Fact (FOF) ¶ 1.) Claimant began receiving total workers' compensation disability benefits pursuant to a Notice of Compensation Payable, which described Claimant's injury as "left lower back and left hip strain." (FOF ¶ 1.) Claimant's total disability benefits were modified to partial disability benefits by a Supplemental Agreement dated December 7, 2007. (FOF ¶ 1.) At that time, Claimant returned to a restricted light duty position with Employer. (FOF ¶ 5b.)

On May 14, 2008, Employer filed a Termination Petition[1] alleging that Claimant had fully recovered from her September 19, 2007, work-related injury as of January 28, 2008. (FOF ¶ 2.) On July 14, 2008, Claimant filed the Reinstatement Petition[2] alleging a worsening of condition and that there were no restricted duty positions available for Claimant. (FOF ¶ 2; Reinstatement Petition, Reproduced Record (R.R.) at 9a.) Employer filed a timely Answer to the Reinstatement Petition denying the material allegations contained therein.[3] (FOF ¶ 2.) The petitions were consolidated and hearings were held before the WCJ.

Claimant testified before the WCJ at the October 8, 2008 hearing and later presented the November 7, 2008 deposition testimony of Sofia Lam, M.D., who is board certified in interventional pain management, anesthesiology, utilization review and quality assurance. (FOF ¶¶ 4–5.) Employer presented the September 24, 2008 deposition testimony of Ronald Greene, M.D., who is a board certified orthopedic surgeon. (FOF ¶ 3.)

Claimant testified that she was injured on September 19, 2007, when she grabbed a child and felt pain in her back. (FOF ¶ 5a.) Claimant returned to light duty work with lifting restrictions, which Employer accommodated until June 2008, when Dr. Lam issued a note restricting her from lifting more than five pounds, and stating "no going up/down stairs." (FOF ¶¶ 5a, 5b.) Claimant took Dr. Lam's June 2008 note to Employer and was told that she could not work with the new restriction because she had to go up a flight of ten stairs approximately four times a day in that position. (FOF ¶ 5b; WCJ Hr'g Tr. at 14, October 8, 2008, R.R. at 68a.) Claimant went back to see Dr. Lam in July 2008 and the doctor gave her a note with the same work restrictions that the doctor had imposed in June 2008.[4] (WCJ Hr'g Tr. at 17, R.R. at 71a.) Claimant testified that she faxed the July 2008 note to Employer and Employer responded that, since nothing had changed, Claimant still could not work for Employer.[5] (WCJ Hr'g Tr. at 17, R.R. at 71a.)

1. Employer's Termination Petition was assigned to the WCJ on May 19, 2008.

2. Claimant's Reinstatement Petition was assigned to the WCJ on July 18, 2008.

3. Contrary to the WCJ's Finding of Fact 2, Claimant did not file an Answer to Employer's Termination Petition. See Certified Record, Board's Docket Sheet at Docket Number A09–0855.

4. Claimant submitted the July 28, 2008 note from Dr. Lam into evidence at the October 8, 2008 hearing before the WCJ as Exhibit C–2. (WCJ Hr'g Tr. at 15, R.R. at 69a.)

5. Claimant testified that she was continuing to receive partial disability benefits. (WCJ Hr'g Tr. at 17, R.R. at 71a.)

Claimant testified that she was able to perform her light-duty position until Dr. Lam imposed the new restriction. (FOF ¶¶ 5a, 5b.) Claimant testified that Dr. Lam simply asked her if she had stairs at work, to which Claimant replied in the affirmative, and Dr. Lam imposed the restriction. (FOF ¶ 5a.) Claimant stated that there was no further discussion with Dr. Lam regarding the stairs. (FOF ¶ 5a.)

Claimant testified further that she did not feel as though she had fully recovered from her work-related injury, but felt that she had somewhat recovered. (FOF ¶ 5a.) Claimant continues to have pain in her lower back and pain going down her right leg. (FOF ¶ 5b.) Claimant believed that she could return to work if she was working with older children and did not have to lift younger children. (FOF ¶ 5a.) Claimant testified that, until June 2008, she worked with the older children in her light-duty position, which involved going up and down a flight of ten stairs approximately four times a day. (FOF ¶¶ 5a, 5b.) Claimant believed that she could return and perform her light-duty position with Employer because she goes up and down three flights of stairs at her apartment complex throughout the day. (FOF ¶¶ 5a, 5b.) Claimant did not see any reason why she could not currently return to her light-duty position. (FOF ¶ 5a.) Claimant testified that she has not looked for any other work since she stopped working for Employer. (FOF ¶ 5b.)

Dr. Lam continuously treated Claimant between March 17, 2008 and October 22, 2008. (FOF ¶ 4a.) Based upon Dr. Lam's October 22, 2008 examination of Claimant and a review of Claimant's medical records, she opined that Claimant could return to light-duty work, four hours per day, as of that date. (FOF ¶ 4a.) Dr. Lam opined that Claimant could not lift or carry above ten pounds, go up or down the stairs on a repeated basis, or be in a position for longer than four hours at a time. (FOF ¶ 4b.) Dr. Lam opined further that Claimant had not completely recovered from her work-related injury. (FOF ¶ 4b.) Dr. Lam limited the frequency of Claimant going up and down stairs so as not to aggravate her lumbar radiculopathy. (FOF ¶ 4c.) Dr. Lam provided Claimant written documentation in July 2008 regarding this limitation; however, she encouraged Claimant to continue her light-duty, part-time job. (FOF ¶ 4c.) Dr. Lam did not take any history as to how often or how many steps Claimant would have to climb at work or at her place of residence. (FOF ¶ 4d.) Dr. Lam testified that she did not intend to take Claimant totally off steps when she wrote the July 2008 note restricting Claimant's use of stairs but, instead, intended to restrict Claimant from doing frequent steps, meaning no more than twenty steps every hour or two hours. (FOF ¶ 4d.) Dr. Lam opined that Claimant's prognosis was guarded because the type of injuries suffered by Claimant can continue to be bothersome on an indefinite basis. (FOF ¶ 4c.)

Dr. Greene examined Claimant on January 28, 2008, took a history of Claimant's September 19, 2007 work-related accident, and reviewed Claimant's medical records. (FOF ¶¶ 3a–3c.) Based upon the foregoing, Dr. Greene opined that Claimant had fully recovered from her work-related injury with no residuals from the hip sprain and the low back strain. (FOF ¶ 3d.) However, Dr. Greene opined that he would not change any of Claimant's job parameters because she was successfully working at that point and able to do the light-duty job. (FOF ¶ 3d.) Dr. Greene believed that Claimant may have rheumatology problems, but that such problems had nothing to do with Claimant's work-related injuries. (FOF ¶ 3d.) The parties stipulated before the WCJ at the October 8, 2008

hearing that there was no worsening of Claimant's condition after Dr. Greene's January 28, 2008 examination of Claimant. (FOF ¶ 11.)

The WCJ found Dr. Greene's testimony credible that Claimant was capable of continuing in her light-duty position. (FOF ¶ 8.) However, the WCJ rejected Dr. Greene's testimony that Claimant was fully recovered from the September 19, 2007 work-related injury, given his opinion that Claimant should continue to work in a light duty capacity and given Claimant's credible testimony that she continues to have symptoms related to the work injury. (FOF ¶ 8.) The WCJ found Dr. Lam's testimony credible that Claimant was not fully recovered from the work-related injury. (FOF ¶ 9.) The WCJ rejected, however, Dr. Lam's testimony that, in July 2008, Claimant was incapable of climbing up and down the stairs at work. (FOF ¶ 9.) The WCJ found it significant that Dr. Lam did not take any history from Claimant as to how often or how many steps she would have to climb at work or at her residence. (FOF ¶ 9.) The WCJ rejected Dr. Lam's testimony because on the July 2008 note she indicated "no going up/down stairs," but in the doctor's deposition, Dr. Lam stated that she actually meant that Claimant should not be going up and down stairs frequently. (FOF ¶ 9.) Finally, the WCJ accepted Claimant's testimony as credible that: (1) as of the date of her testimony, she was not fully recovered from the work injury; (2) she continued to have some lumbar complaints; (3) she felt capable of returning to her light-duty position; and (4) she had to climb one flight of ten stairs four times a day in the light-duty position, and three flights of stairs in her apartment complex. (FOF ¶ 10.)

Accordingly, the WCJ found that Claimant did not meet her burden of establish-ing that the work-related injury caused a loss of earning power in June 2008, for the following reasons: (1) the parties stipulated there was no worsening of Claimant's condition after the January 28, 2008 examination by Dr. Greene; (2) Dr. Lam's testimony regarding the "no stairs" restriction in July 2008 was not credible; and (3) Claimant's testimony established that she actually climbs more stairs at her home than she did at work; therefore, it was not credible that Claimant could not continue to work after June 2008 because she could not climb the stairs at work. (FOF ¶ 11.) In addition, the WCJ concluded that Employer did not meet its burden of proving that Claimant was fully recovered from the September 19, 2007 work-related injury as of January 28, 2008. (WCJ Decision, Conclusions of Law ¶ 2.) Thus, the WCJ entered an order denying and dismissing Claimant's Reinstatement Petition and Employer's Termination Petition. Claimant appealed the WCJ's decision and order to the Board.[6]

■ Upon review, the Board determined that Claimant voluntarily left her light-duty position; therefore, she bore the burden of showing that her condition had worsened to the point that she could not perform the light-duty position or that work within her restrictions was otherwise not available. (Board Op. at 6–7) (citing *Cyprus (RAG) Cumberland Resources v. Workers' Compensation Appeal Board (Stewart)*, 767 A.2d 1151, 1153 (Pa.Cmwlth. 2001).) The Board stated that it was "clear from the conflict between Dr. Lam's restriction note and her testimony, as well as from Claimant's testimony that she was able to negotiate stairs, that there was a misunderstanding or error regarding Claimant's actual stair restriction, and that Claimant was aware that her restriction

---

6. Employer did not appeal the denial of its Termination Petition.

did not fit her abilities." (Board Op. at 7.) The Board stated further that "[n]othing in Claimant's testimony suggests that she at any point attempted to clarify the stair restriction with [Employer] or obtain a corrected restriction clarifying that she actually was able to climb stairs that would allow her to continue working light duty, which she testified that she 'would love to' do." (Board Op. at 7.) Thus, the Board determined that "the evidence of record supports a conclusion that Claimant chose not to take any steps to continue her light duty position even though she knew she was capable of performing it, and that she therefore voluntarily left that position." (Board Op. at 7.) The Board stated further that the record was devoid "of any evidence that work was otherwise unavailable to Claimant." (Board Op. at 8.) As such, the Board concluded that the WCJ did not err in denying Claimant's Reinstatement Petition. Claimant now petitions this Court for review.[7]

■ Herein, Claimant argues that the WCJ and the Board utilized an incorrect standard of proof in denying her Reinstatement Petition. Claimant argues that there is no evidence in this case of a bad faith rejection of available work; accordingly, the WCJ and the Board erred by failing to analyze Claimant's Reinstatement Petition under the standard set forth recently by our Supreme Court in *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 606 Pa. 621, 2 A.3d 548 (2010). Claimant contends that Employer eliminated her light-duty position and that the WCJ erroneously assumed Claimant stopped working due to a worsening of her condition. Claimant states that she filed the Reinstatement Petition based on the elimination of her light-duty position; therefore, she is entitled to a reinstatement of total disability benefits because her light-duty position was eliminated through no fault of her own. Claimant argues that her benefits must be reinstated until Employer establishes either her full recovery or that ongoing work within Claimant's restrictions remains available.

Claimant argues further that the Board erred by finding that Claimant voluntarily left her light-duty position. Claimant contends that the WCJ found her testimony credible that she stopped working because Employer eliminated her light-duty job. Claimant argues that the Board erred by placing the burden upon her to take steps to continue her light-duty position, which she knew she was capable of performing. Again citing *Bufford*, Claimant contends that she had no burden in a reinstatement petition to locate available work within her restrictions.

Initially, we note that Claimant not only filed the Reinstatement Petition based on a lack of restricted duty positions, she did, in fact, also file her Reinstatement Petition based on a worsening of condition and that

---

7. "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Township School District v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008). "Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support the conclusion." *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Cmwlth.382, 601 A.2d 879, 881 (1992). The appellate role is not to reweigh the evidence or review the credibility of witnesses, but to "determine whether, upon consideration of the evidence as a whole, the [WCJ's] findings have the requisite measure of support in the record." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 293, 612 A.2d 434, 437 (1992).

the parties stipulated that there was no worsening of Claimant's condition after Dr. Greene's January 28, 2008 examination of Claimant. (FOF ¶¶ 2, 11; Reinstatement Petition, R.R. at 9a.) Regardless, we disagree with Claimant's contentions on appeal.

■ In *Bufford*, our Supreme Court clarified the relevant burdens where a claimant is seeking the reinstatement of suspended benefits. The modified standard set forth in *Bufford* is as follows:

A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim. The claimant need not reprove that the disability arose from his or her original claim. Once the claimant meets this burden, the burden then shifts to the party opposing the reinstatement petition. In order to prevail, the opposing party must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. This burden may be met by showing that the claimant's loss in earnings is, in fact, caused by the claimant's bad faith rejection of available work within the relevant required medical restrictions or by some circumstance barring receipt of benefits that is specifically described under [the] provisions of the [Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77

P.S. §§ 1–1041.4; 2501–2708] or in this Court's decisional law.

*Bufford*, 606 Pa. at 637, 2 A.3d at 558. In clarifying the relevant burdens, the Supreme Court eliminated the requirement that a claimant seeking reinstatement after a suspension of benefits prove that his or her loss of earnings was through no fault of his or her own.[8]  *Id.* at 635, 2 A.3d at 557.

Applying the foregoing standard set forth in *Bufford* to the facts in the present case, as found by the WCJ, we conclude that the WCJ and the Board did not err. Based on the WCJ's findings of fact, Claimant failed to establish that her earning power was once again adversely affected by her work-related disability. The WCJ found that Dr. Lam did not intend for the "no stairs" restriction to stop Claimant from going up and down stairs altogether but, instead, the doctor intended to restrict Claimant from going up and down stairs frequently. (FOF ¶ 9.) In addition, Dr. Lam testified that she encouraged Claimant to continue performing her light-duty job. (FOF ¶ 4c; Lam Dep. at 18, R.R. at 135a.)

More importantly, Claimant admitted that her work-related disability did not prevent her from going up and down several flights of stairs a day and that, at the time Dr. Lam imposed the "no stairs" restriction, Claimant was able to go up and down the stairs at her place of employment four times a day.[9]  (FOF ¶¶ 5a, 5b,

---

8. The Supreme Court, in *Bufford*, points out that the judicial construct of the relative burdens set forth in *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990) and *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 563 Pa. 297, 760 A.2d 369 (2000), mentions "the issue of 'fault' ... as part of the first prong of **the claimant's burden**." *Bufford*, 606 Pa. at 635, 2 A.3d at 557 (emphasis in original). The Supreme Court held that "[a]

thorough reading of these cases suggests that the *Pieper* and *Stevens* Courts did not actually intend that the issue of 'fault' be part of the claimant's burden." *Id.* at 636, 2 A.3d at 557.

9. *See Upper Darby Township v. Workers' Compensation Appeal Board (Nicastro)*, 23 A.3d 601, 606 (Pa.Cmwlth.2011) (Reinstatement denied where claimant's own testimony belied the theory that his work-related injury once again negatively impacted his earning power).

10.) The WCJ found, based on Claimant's testimony, that up until the point that Dr. Lam restricted Claimant from going up and down stairs, she was able to perform her light-duty position. (FOF ¶ 5b.) Claimant also believed, at the time she testified before the WCJ, that she could return and perform her light-duty position with Employer because she goes up and down three flights of stairs at her apartment complex throughout the day. (FOF ¶¶ 5a, 5b.)

As determined by the Board, Claimant did not stop working due to Employer's elimination of her light-duty position. Instead, Claimant had to stop working because of the "no stair" restriction incorrectly placed on her by Dr. Lam. Claimant was aware that: this restriction was incorrect; she could perform her light-duty position which required some use of stairs; Dr. Lam was not aware of Claimant's ability to go up and down stairs or her stair requirements at work; and Employer was honoring these restrictions. Claimant did not contact Dr. Lam to explain or to ask her to issue a new note that would contain the correct restrictions on Claimant's ability to work. In fact, Claimant went back to Dr. Lam the following month and received a new note that contained the same incorrect restriction on Claimant's ability to work, which Claimant provided to Employer. Had Claimant secured a note from Dr. Lam that did not contain the inaccurate restrictions that prevented her from working, she would not have had to stop her light-duty work. It was Claimant's failure to do so that caused the loss of her light-duty job, not her medical condition or Employer's actions.

In short, there is no credible record evidence that Claimant was unable to perform her light-duty position due to an inability, caused by her work-related disability, to go up and down stairs. *See Cyprus,*

767 A.2d at 1153 (A claimant is only partially disabled if she is working "**or she could be working at a lighter lesser paying job.**") (emphasis in original). Thus, Claimant failed to prove, pursuant to *Bufford,* that her earning power was once again adversely affected by her work-related disability.

Accordingly, the Board's Order denying Claimant's Reinstatement Petition is affirmed.

### ORDER

**NOW,** October 11, 2011, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.