**Thomas DOUGHERTY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD: (QVC, Inc.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 25, 2014.
Decided Oct. 14, 2014.

Michael G. Dryden, Philadelphia, for petitioner.

Katherine M. Mezzanotte, Philadelphia, for respondent QVC, Inc.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge SIMPSON.

Thomas Dougherty (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ) dismissing Claimant's reinstatement petition under Section 413(a) of the Workers' Compensation Act (Act).[1] Claimant contends the competent evidence supports reinstatement because he is entitled to the presumption that his continuing disability caused his loss of earnings after layoff. Applying the presumption, Claimant argues reinstatement is warranted unless QVC, Inc. (Employer) could establish that he committed bad faith. Because the WCJ erred in failing to apply the legal presumption of causation, we vacate and remand to the Board to remand to the WCJ to apply the presumption here.

## I. Background

Claimant was employed as a corporate video producer for nine years at the time he injured his Achilles tendon in January 2009. As a corporate video producer, Claimant performed multiple functions for a shoot, which included carrying heavy equipment, standing, lighting, blocking scenes, and camera operations. Claimant returned to work in June 2009, when his benefits were suspended. At the time he returned to work, Claimant notified his then-supervisor of his physical restrictions. Employer laid-off this supervisor during corporate restructuring.

Upon eliminating Claimant's position in April 2010 for economic reasons, Employer transferred Claimant to a writer-producer position without any loss in salary. The writer-producer position was less physically demanding than his prior position, consisting of sedentary desk work. Approximately a year later, Employer discharged Claimant based on unsatisfactory work performance. Claimant seeks reinstatement of wage loss benefits as of the date of his discharge from employment.

Claimant filed reinstatement and penalty petitions.[2] Claimant testified and sub-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

2. As Claimant did not appeal the WCJ's dismissal of his penalty petition, it is not before us.

mitted the deposition testimony of his treating physician Dr. Wen Chao (Treating Physician). In rebuttal, Employer presented the testimony of Claimant's supervisor, Claire Wolper (Supervisor), and submitted the deposition testimony of its medical expert.

Ultimately, the WCJ credited the testimony of Treating Physician over that of Employer's medical expert. Treating Physician testified that Claimant had restrictions upon his return to work in June 2009, after surgery on his Achilles tendon. Treating Physician also testified Claimant could only perform sedentary work. In April 2011, Treating Physician submitted revised restrictions, which included lifting limitations and standing limitations to one to three hours per day.

The WCJ found Claimant's testimony established he was capable of performing the *writer-producer* position, and was unhappy with the position change. When he returned to his pre-injury (video producer) job after his surgery, Claimant reported his restrictions to his then-supervisor, who was later fired and replaced by Supervisor. Claimant testified he believed Employer eliminated his pre-injury job of video producer because of his work injury. Claimant conceded that his inability to perform the job of a writer-producer did not relate to his physical restrictions.

Supervisor testified she began supervising Claimant in the fall of 2009. No one informed her about Claimant's restricted activities or limitations, and she was unaware of them. A writer-producer writes scripts and performs tasks that are not on air, such as consults with cameramen, stylists, and other pre-production work. She testified video work was a low priority for Employer, as it consisted of about one percent of the work in her department. Claimant was the only video producer when Employer eliminated the position and transitioned him to a writer-producer like the other employees in her department. The transition was unsuccessful because Claimant did not submit completed scripts on deadline, and did not possess the skills necessary to perform the writer-producer job, despite training.

The WCJ found that the testimony did not establish that Claimant's earning power was adversely affected by his disability. WCJ Op., 9/7/2012, Finding of Fact (F.F.) No. 39. Therefore, she dismissed the reinstatement and penalty petitions. Claimant appealed the dismissal of reinstatement to the Board.[3]

The Board noted Claimant appealed only as to the WCJ's Finding of Fact No. 39, and Conclusion of Law No. 3, that his loss of earning power did not relate to his disability. The Board affirmed the WCJ, reasoning Claimant was not entitled to the presumption that his loss of earnings was caused by his work injury.

Claimant now petitions for review.[4] He asserts that he returned to his pre-injury (video producer) work with restrictions, and he was not qualified to perform the writer-producer job to which Employer assigned him after eliminating his pre-injury job. Claimant contends the WCJ erred in not awarding reinstatement when he was

---

3. The WCJ granted Claimant's petition to review, expanding the work injury description, and amending the notice of compensation payable to include the Achilles tendon tear and required reconstruction. This expansion is not at issue in this appeal.

4. Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Cooney v. Workers' Comp. Appeal Bd. (Patterson UTI, Inc.)*, 94 A.3d 425 (Pa.Cmwlth.2014).

discharged from an alternate job for unsatisfactory work performance.

## II. Discussion

A claimant seeking reinstatement of suspended benefits must prove that: (1) his earning power is once again adversely affected by the work-related injury; and, (2) the disability that gave rise to the original claim continues. *Bufford v. Workers' Comp. Appeal Bd. (N. Amer. Telecom)*, 606 Pa. 621, 2 A.3d 548 (2010); *Teledyne McKay v. Workmens' Comp. Appeal Bd. (Osmolinski)*, 688 A.2d 259 (Pa. Cmwlth.1997). Once the claimant meets this burden, the burden shifts to the party opposing reinstatement to show that the claimant's loss in earnings is not caused by the disability arising from the work injury. *Bufford.*

Under a suspension of benefits, in contrast to a termination, an employer remains responsible for the consequences of a work injury. *Magulick v. Workers' Comp. Appeal Bd. (Bethlehem Steel)*, 704 A.2d 176 (Pa.Cmwlth.1997). This is because the injury is presumed to continue, yet a claimant suffers no related loss of income. *Id.* Accordingly, a claimant may be entitled to a presumption of causation between the work injury and later loss of income.

As to the second element, that the disability that gave rise to the original claim continued, a claimant may satisfy his burden as to continuation of his work injury through his own testimony. *Teledyne.* Here, the WCJ found that Claimant's disability from his work injury continued. F.F. No. 14 ("Claimant didn't make a recovery from the work injury since its occurrence"). Therefore, Claimant satisfied

the second prong necessary to establish entitlement to reinstatement.

As to the first element, that a claimant's earning power is once again adversely affected by the work injury, where a claimant returns to work with restrictions related to the injury (a modified position), and is subsequently laid off, a claimant is entitled to the presumption that the loss of earning power is causally related to the work injury. *Folk v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 802 A.2d 1277 (Pa.Cmwlth.2002); *Teledyne.* Stated differently, when a claimant does not return to his pre-injury job, and is then laid off from the modified duty job, the law presumes the layoff and attendant loss of earnings is attributable to the continued injury, shifting the burden to an employer to rebut the presumption. *Folk.*

Conversely, where a claimant returns to his pre-injury position, and works under a suspension without restrictions, and is *then* laid off, a claimant must affirmatively establish the work injury caused the loss of earnings.[5] *Folk; Teledyne.*

### A. Entitlement to Presumption

Claimant contends the WCJ and the Board erred in failing to apply the legal presumption of causation, and shifting the burden of proof to Employer. He argues that because the WCJ found his injury continues, and he suffered a loss in earnings through his layoff, the WCJ should have granted reinstatement. Claimant asserts he does not need to prove a causal relationship between his layoff and his disability from his work injury because he returned to his pre-injury position with restrictions.

---

5. Other circumstances, including intervening events, may also render this legal presumption inapplicable. *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.)*, 851 A.2d 997 (Pa.Cmwlth.2004) (layoff status triggering presumption may be refuted by voluntary retirement).

Employer counters that Claimant is not entitled to reinstatement because his loss in earnings (layoff) was unrelated to his disability. Rather, Employer laid-off Claimant for unsatisfactory work performance.

■ A claimant is only entitled to the presumption of causation when he returns to work under suspension with restrictions, that is, returns to a modified or light-duty position. *See, e.g., Bufford; Pan Bldg. Corp. v. Workmen's Comp. Appeal Bd. (Thompson)*, 698 A.2d 697 (Pa.Cmwlth. 1997). If a claimant can still perform the pre-injury job despite his restrictions, he has the burden of proving causation. *Folk; Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n)*, 819 A.2d 626 (Pa. Cmwlth.2003).

■ Further, it is relevant whether the restrictions required modification of the duties Claimant performed in his pre-injury job. *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170 (Pa.Cmwlth. 2004) (noting that presumption applies when restrictions require job modification); *Klarich*, 819 A.2d at 629 ("medical restrictions are material only if they require modification of the claimant's job duties"). Restrictions that "do not require any job modification" do not trigger the presumption of causation. *Folk*, 802 A.2d at 1280.

Here, the WCJ found that Claimant returned to his pre-injury position of video producer with restrictions. Specifically, the WCJ found that Claimant "resumed work as a corporate video producer without the performance of all of his pre-injury duties and with restrictions on his work activities, specifically the Claimant couldn't stand and/or sit for prolonged periods and had opportunities for the elevation of his leg as a result of its swollen condition." F.F. No. 6.

Although the WCJ found Claimant returned to his pre-injury position with restrictions, her finding regarding modification of duties is less clear. Regarding modification, the WCJ found that Claimant's physical restrictions did not preclude him from performing the *writer-producer* position. Specifically, she found "the evidence ... didn't establish that [Claimant] couldn't do the aforesaid as results of restrictions on [Claimant's] activities by [Treating Physician] and as a consequence of the Claimant's work injury at issue." F.F. No. 9. Rather, Claimant's testimony and the testimony of Supervisor "established that [Claimant] volunteered for international shoots, specifically at jobs with greater physical demands than that of a writer and producer position." *Id.*

Particularly relevant to the analysis here, the WCJ found as follows:

Although [Claimant] testified that [he] couldn't do his job in the same way as that before the work injury at the time of his resumption of work after the work injury, *no evidence established that [Claimant] couldn't physically do the job of writer and producer* for the approximate 11 months of his assignment to it and until the termination of [Claimant's] employment for another reason than [his] work injury.

F.F. No. 10 (emphasis added). As to the burden of proof, the WCJ did not afford Claimant a presumption of causation; rather, the WCJ concluded that "[t]he Claimant didn't sustain that burden, in accordance with the terms of the [Act]." Conclusion of Law No. 3.

Although the testimony establishes that Claimant's inability to perform his assignments as a *writer-producer* was not caused by any physical restrictions, the analysis for reinstatement must focus on his restrictions when he returned to work *at his pre-injury position*, not his post-injury po-

sition. *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990); *Folk.*

To that end, the pertinent inquiry under the clarified burden of proof set forth in *Bufford* is whether Claimant returned to work capable of performing his pre-injury (video producer) position. Here, the WCJ emphasized Claimant's physical capabilities to perform the *writer-producer job,* as opposed to his pre-injury job, thus clouding the analysis.[6] Thus, the WCJ's confusion as to the relevant position for comparison is apparent from the Finding of Fact No. 10, where she notes "no evidence established that [Claimant] couldn't physically do the job of *writer and producer* for the approximate 11 months of his assignment to it." F.F. No. 10 (emphasis added). Claimant's ability to perform the sedentary writer-producer job has no bearing on his ability to perform his pre-injury job of video producer without modification.

Relevantly, the WCJ found Claimant returned to his pre-injury position with restrictions, and that his injury continued. *Id.;* F.F. Nos. 6, 14. Specifically, she found Claimant "resumed work as a corporate video producer without the performance of all of his pre-injury duties and with restrictions on his work activities." *Id.* She found that Claimant's former supervisor assisted him in performing his duties, and "set up of [his] job," implying modification of duties. *Id.*

The WCJ's imposition of the burden of proof on Claimant is inconsistent with these findings. The WCJ's conclusion is also inconsistent with Claimant's testimo-

ny, which she found credible based on his demeanor. F.F. No. 4.

Based on the WCJ's findings, that Claimant returned with restrictions, and that his injury continued, Claimant is entitled to the presumption of causation here. *Magulick* (claimant who could not perform pre-injury duties upon return to work was entitled to presumption of causation). The WCJ and the Board erred in requiring Claimant to demonstrate a causal connection between his layoff (loss of earnings) and his continued disability. *Stevens v. Workers' Comp. Appeal Bd. (Consol.Coal),* 563 Pa. 297, 760 A.2d 369 (2000) (regarding layoff for unsatisfactory work performance).

As causation is presumed, the burden shifted to Employer to prove that Claimant's loss in earnings was not caused by his work injury. Accordingly, this matter is remanded to the WCJ to apply the presumption of causation to the facts found here, based on the existing record.[7]

## B. Bad Faith

Having concluded the WCJ erred in placing the burden of causation on Claimant, next, we note the effect of the circumstances of Claimant's layoff on his reinstatement petition when the burden is shifted to Employer.

█ Applying the causation presumption, the burden shifted to Employer. Employer's burden

> may be met by showing that the claimant's loss of earnings is, in fact, caused

---

6. Differentiation between Claimant's abilities to perform regular work as opposed to light-duty work is complicated by the timing of Claimant's reassignment from video producer to writer-producer because the two positions required different skills and physical abilities. There is no dispute that Claimant had the physical abilities to perform as a writer-pro-

ducer, without modification. There is also no dispute that writer-producer is a sedentary position that is less physically demanding than that of corporate video producer.

7. We express no opinion on the ultimate outcome.

by the claimant's bad faith rejection of available work within the relevant required medical restrictions or by some circumstance barring receipt of benefits that is specifically described under provisions of the Act or in this Court's decisional law.

*Bufford,* 2 A.3d at 558.

In the context of a layoff, an employer may meet this burden by showing bad faith or misconduct on behalf of Claimant that was responsible for the discharge. *See Shop Vac Corp. v. Workers' Comp. Appeal Bd. (Thomas),* 929 A.2d 1236 (Pa.Cmwlth.2007). Generally, absent bad faith, the consequences of discharge are not allocated to a claimant. *Cryder v. Workers' Comp. Appeal Bd. (Nat'l City),* 828 A.2d 1155 (Pa.Cmwlth.2003).

Here, the WCJ found Claimant was laid off based on unsatisfactory work performance. F.F. No. 20. Specifically, she found he "didn't have the skill set to maintain the position of writer and producer on the basis of [Claimant's] performance of work ... for over one year." *Id.*

Unsatisfactory work performance alone does not suffice to deprive Claimant of reinstatement of benefits. *B & B Drywall, Inc. v. Workers' Comp. Appeal Bd. (Griffo),* 784 A.2d 250 (Pa.Cmwlth.2001) (inability to meet sales quotas is not grounds to deny reinstatement). The standard an employer must meet to show "lack of good faith" or "bad faith" underlying a discharge is not that of willful misconduct. *Virgo v. Workers' Comp. Appeal Bd. (Cnty. of Lehigh–Cedarbrook),* 890 A.2d 13, 19 (Pa.Cmwlth.2005). Rather, this Court emphasized "if claimant shows he would if he could, the bad faith threshold is not met." *Hess v. Workers' Comp. Appeal Bd. (Target Corp.)* (Pa.Cmwlth., No. 341 CD 201, filed August 6, 2013) (unreported), 2013 WL 4001403.

In the context of a layoff for unsatisfactory work performance, loss of earnings is presumed to relate to the work injury when a claimant is terminated from a modified or light-duty position. *Stevens.* The fact that Claimant was subsequently reassigned to a less physically demanding position does not alter the result.

Notably, the WCJ did not find Claimant committed bad faith or misconduct. Similar to the WCJ in *Cryder,* the WCJ here found Claimant returned to his pre-injury position with restrictions. Moreover, the WCJ found Claimant informed his supervisor about his restrictions, and his supervisor accommodated the set-up of his job as a result. F.F. No. 6.

On remand, when the burden is shifted to Employer, the WCJ is instructed to clarify whether Employer met its burden of proof, sufficient to overcome the presumed relationship between Claimant's injury and loss of earnings.

### III. Conclusion

The capacity in which Claimant returned to his pre-injury position was material. The WCJ should have compared Claimant's pre-injury duties for the video producer position to his duties for the same position post-injury, not to the sedentary writer-producer position to which Employer later assigned him.

Given the difference between Claimant's pre-injury job duties, and his duties when he returned to that position, the WCJ should have afforded the Claimant the presumption of causation. Therefore, we vacate the Board's order and remand to the Board to remand to the WCJ to apply the presumption here, based on the existing record.

### *ORDER*

**AND NOW,** this 14th day of October, 2014, the order of the Workers' Compensa-

tion Appeal Board is **VACATED** and the matter is **REMANDED** in accordance with this opinion.

Jurisdiction is relinquished.