# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Stoutzenberger,      :
         Petitioner      :
         :
         v.      :    No. 1088 C.D. 2014
         :    SUBMITTED: June 26, 2015
Workers' Compensation Appeal      :
Board (Quail Run/Susquehanna),      :
         Respondent      :


BEFORE:     **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
               **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE PATRICIA A. McCULLOUGH,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**               **FILED: November 5, 2015**


       Kimberly Stoutzenberger (Claimant) petitions for review of the May 28, 2014 Opinion and Order by the Workers' Compensation Appeal Board (Board) denying her appeal from the Decision and Order of the Workers' Compensation Judge (WCJ) denying Claimant's Petition to Reinstate Compensation Benefits and granting her Petition to Modify Compensation Benefits (only the denial is at issue here). Claimant alleges that the WCJ failed to make a reasoned decision supported by substantial competent evidence. Finding no error, we affirm.

       Claimant was employed at Quail Run Management LLC's Susquehanna Valley Nursing and Rehabilitation Center (Employer) as a certified

nursing assistant. She injured her lower back on July 10, 2007. Employer accepted the injury by Notice of Compensation Payable. Claimant returned to work on February 18, 2008 and her benefits were suspended through a Notification of Suspension or Modification. She subsequently filed a Petition to Reinstate Compensation Benefits alleging that her condition had worsened such that she was capable only of part-time work from February 18, 2008 to May 5, 2008 and incapable of work thereafter. A WCJ partially granted Claimant's Petition on January 15, 2010 and awarded benefits based on lost wages from her concurrent employment. She appealed to the Board which affirmed on February 10, 2012. She did not take any further appeals.

This matter began on October 11, 2011 when Claimant filed a Petition to Reinstate Benefits alleging that her condition had worsened. Claimant testified before the WCJ and both parties presented expert medical testimony. The WCJ denied the Petition on January 17, 2013, rejecting Claimant's testimony and that of her expert and finding the testimony of Employer's expert credible. On appeal, Claimant argued that the WCJ erred in denying her Petition to Reinstate by not issuing a reasoned decision supported by substantial competent evidence. The Board affirmed and determined that the WCJ was within his province when he found Claimant's testimony not credible based upon her demeanor and that the WCJ adequately explained his rejection of Claimant's expert medical testimony.

Claimant here argues[1] that the WCJ failed to make a reasoned decision because his findings of fact are not supported by the record and he failed

---

[1] Based on the issue raised, the scope of our review is limited to determining if findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

to provide an adequate explanation for his rejection of Claimant's evidence. The "reasoned decision" requirement is found in Section 422(a) of the Workers' Compensation Act,[2] 77 P.S. § 834, which provides as follows:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

As to Section 422(a), we have explained that in order to be a reasoned decision within the meaning of that section, the WCJ's decision must allow for adequate appellate review. If expert medical testimony is presented by deposition, the WCJ's resolution of conflicting evidence must be supported by more than a statement that finds one expert to be more credible than another. The WCJ must

---

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1 – 1041.4, 2501-2708.

provide some explanation of the actual objective basis for the credibility determination if the decision is to be a reasoned one that facilitates effective appellate review. *Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Moreover, there are any number of objective factors which may support the WCJ's credibility determinations. They must be identified and articulated. *Id*. However, Section 422(a) is not carte blanche for a party to challenge the WCJ's basis for credibility determinations. They will be upheld on appeal unless they are made in an arbitrary or capricious manner. *Id.*

Questions of credibility and evidentiary weight are the exclusive province of the WCJ as fact-finder. The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works),* 862 A.2d 137, 143 (Pa. Cmwlth. 2004). For appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence[3] supports the WCJ's necessary findings, those findings will not be disturbed on appeal. *Id.* at 144. We may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). With this framework we now turn to Claimant's assertion that the WCJ failed to make a reasoned decision.

---

[3] Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prod., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). In reviewing a decision for substantial evidence, the court must view the evidence in a light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. *Id.*

4

A claimant seeking reinstatement of suspended benefits must show that her earning power is again adversely affected by the work-related injury; and, that the disability that gave rise to the original claim continues. *Bufford v. Workers' Comp. Appeal Bd. (N. Amer. Telecom)*, 2 A.3d 548, 558 (Pa. 2010); *Dougherty v. Workers' Comp. Appeal Bd. (QVC, Inc.)*, 102 A.3d 591, 595 (Pa. Cmwlth. 2014). Here, Claimant testified in support of her Petition to Reinstate and presented via deposition expert medical testimony by Perry Argires, M.D., who is board certified in neurological surgery. Employer presented via deposition expert medical testimony by Robert W. Mauthe, M.D., who is board certified in physical medicine and rehabilitation, electromyography, and in the subspecialty of pain medicine.

Claimant testified that she injured her lower back on July 10, 2007 while working for Employer as a certified nursing assistant. (WCJ's January 17, 2013 Decision and Order, Finding of Fact (FF) 5.a.) Her pain worsened from 2010 to 2011 and she began seeing Dr. Argires. Claimant had physical therapy, and was given an MRI and a discogram. On August 29, 2011 Dr. Argires performed fusion surgery on Claimant for her lower back. (FF 5.b.) Claimant testified that her symptoms are worse since the surgery and that she has been physically unable to work since January 2010. (FF 5.c.-d.) On cross examination she testified that she stopped working her part-time light duty position with Employer in May 2008 as she was unable to perform the duties of that position. Claimant further testified that she did not feel that she was capable of working since May 2008. (FF 5.e.)

The WCJ rejected Claimant's testimony regarding her subjective levels of pain and her inability to work in any capacity since 2008 based upon her

5

demeanor and comportment.[4] In addition to his observation of Claimant's demeanor the WCJ noted that Dr. Argires testified that Claimant was capable of sedentary work leading up to her surgery and then would be disabled totally only for a period of six to nine months post-surgery. (FF 12.)

Dr. Argires testified that he began treating Claimant on April 22, 2011. Her primary complaint on that date was back pain and pain into her right buttock. There were no significant findings on her examination and nothing pertinent on her neurological examination. Dr. Argires ordered an updated MRI. (FF 6.b.) Claimant made several more visits to Dr. Argires who ordered additional tests. A discogram showed that Claimant had a bulging disc. (FF 6.c.-e.) During an August 9, 2011 visit, Dr. Argires offered her fusion surgery which he performed on August 29, 2011. Although Dr. Argires considered the surgery to be successful he was concerned that Claimant seemed to be showing no improvement. He noted however that the operation had an eighty percent success rate. (FF 6. f.-g.) Dr. Argires opined that Claimant's work injury caused an annular tear in the L5-S1 disc that led to her chronic pain and eventually to the surgery. (FF 6.h.)

On cross-examination Dr. Argires testified that he did not request medical records predating Claimant's work injury and that he did not have records from her prior treating physicians. He agreed that pain is subjective, and that Claimant exhibited no neurological defects during his examination. (FF 6.i.) Dr.

---

[4] The WCJ also noted that in the January 15, 2010 Decision and Order a different WCJ determined that Claimant was capable of performing full-time light duty work and rejected Claimant's assertion that she was disabled totally. (FF 12, fn. 1); (1/15/10 Decision and Order, FF 12-13). As noted above, the January 15, 2010 Decision and Order was affirmed by the Board and Claimant did not appeal. The January 15, 2010 WCJ's Decision and the Board's February 10, 2012 affirmance are in the record in this appeal as Bureau Exhibits B-01 and B-02, respectively, to the January 17, 2013 WCJ's Decision.

Argires agreed that annular tears can occur without trauma and can be age related, and that he would not be able to tell from the discogram when the tear occurred. He stated that Claimant either had a disc injury as a direct result of the July 2007 work injury or that the injury aggravated a pre-existing bulging disc and that her pain generator was at the L5-S1 disc. (FF 6.i.-j.)

Employer's expert, Dr. Mauthe, testified that he examined Claimant on three different occasions in 2008, in 2009 and on March 27, 2012. During that most recent examination Dr. Mauthe obtained her updated history during which she advised that she had a discogram and the surgery. Dr. Mauthe's examination was approximately six months post-surgery. Claimant advised that she felt worse since the surgery. (FF 7.b.-c.) Dr. Mauthe reviewed the results of the procedures that she had undergone including the discogram and Dr. Argires' report on the August 29, 2011 surgery. Based upon that review, his physical examinations of Claimant and her history, Dr. Mauthe opined that she continued to display symptoms from her 2007 work injury in the form of a chronic lumbar strain. (FF 7.d.-f.) Dr. Mauthe further opined that the fusion surgery was not related to Claimant's work injury and that the L5-S1 disc was not her pain generator. He noted that if such were the case one would expect improvement in her symptoms post-surgery and that they had not improved. (FF 7.g.) Dr. Mauthe testified that he observed no material change in Claimant's condition from his earlier examinations to the March 27, 2012 examination. He opined that she could continue the light duty work Employer provided in 2010. (FF 7.h.) Dr. Mauthe testified that his review of the most recent discogram indicated that it was not performed properly and that it did not show an annular tear. He noted also that there was no reference to an annular tear in Dr. Argires' post-operative report. (FF 7.i.-l.)

7

The WCJ found Dr. Mauthe's opinions to be more credible than those of Dr. Argires based upon Dr. Mauthe's examinations of Claimant over a multi-year period and the consistency of his opinion of a lumbar strain with the findings of his March 27, 2012 examination. Dr. Mauthe's opinion that Claimant's surgery was not related to her work injury also was consistent with the various tests that showed only degenerative findings and with the lack of any improvement after surgery. The WCJ also noted that Dr. Mauthe's testimony was consistent with his previous testimony found credible by the WCJ in the January 15, 2010 Decision. (FF 13) The WCJ rejected Dr. Argires' opinions as not credible, noting that although Dr. Argires testified that Claimant's work injury caused an annular tear, he could not tell from the discogram when the tear occurred. Further, the WCJ observed that although Dr. Argires noted that there were no significant findings during his initial examination of Claimant and no positive neurological findings, he nonetheless later determined that Claimant was a surgical candidate. This, coupled with the lack of improvement in Claimant's condition after surgery, led the WCJ to accept Dr. Mauthe's opinions over those of Dr. Argires. (FF 14)

Claimant's assertion that the WCJ did not issue a reasoned decision ignores that the WCJ rejected her testimony based on her demeanor and on inconsistencies between her testimony and that of Dr. Argires, as well as the findings of the WCJ in her earlier appeal. Instead she argues that the WCJ did not issue a reasoned decision when he found Dr. Mauthe more credible than Dr. Argires because that determination was based only on two factors: the WCJ credited Dr. Mauthe's opinion on the presence or absence of an annular tear; and the WCJ gave more weight to Dr. Mauthe's opinions regarding the cause of Claimant's symptoms where the surgery performed by Dr. Argires did not alleviate

her symptoms. She argues that the uncontradicted evidence shows that she had an annular tear and that the WCJ ignored Dr. Argires' testimony that twenty percent of patients will not experience improvement from the surgery he performed.

However, the record shows that the WCJ's credibility determination was not so limited. The WCJ explained that his acceptance of Dr. Mauthe's testimony and rejection of Dr. Argires' was based on the consistency of Dr. Mauthe's opinions with his examination findings and with his prior testimony, and his examination of Claimant on multiple occasions. The WCJ also found inconsistencies in Dr. Argires' testimony including the lack of significant findings in his initial examination and subsequent diagnosis of a condition requiring surgery, the admission that annular tears can be age related, and the inability to date the tear he alleged was seen in Claimant's discogram. (FF 13-14)

We have reviewed the record consistent with the rubric outlined above and we conclude that the WCJ properly resolved conflicting evidence and that the resolution is supported by more than a statement that finds one expert to be more credible than another. The WCJ provided a sufficient explanation of the actual objective basis for the finding that Claimant's testimony was not credible and that Dr. Mauthe's opinions were more credible than those of Dr. Argires. We thus conclude that the WCJ's January 17, 2013 Decision is a reasoned one that facilitates effective appellate review. *Verizon.* On this basis we affirm.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Stoutzenberger,      :
             Petitioner      :
     :
        v.      :   No. 1088 C.D. 2014
     :
Workers' Compensation Appeal      :
Board (Quail Run/Susquehanna),      :
             Respondent      :

# **O R D E R**

AND NOW, this 5th day of November, 2015, the order of the Workers' Compensation Appeal Board is AFFIRMED.

---
**BONNIE BRIGANCE LEADBETTER,**
Judge