# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HealthSouth Rehabilitation Hospital :
of Altoona, LLC, :
     Petitioner :
        :
    v. : No. 1687 C.D. 2015
        : Submitted: April 8, 2016
Workers' Compensation Appeal :
Board (Ross and Mount Nittany :
Medical Center), :
     Respondents :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**     **FILED: September 2, 2016**

    HealthSouth Rehabilitation Hospital of Altoona, LLC (HealthSouth) petitions for review of the August 26, 2015 opinion and order of the Workers' Compensation Appeal Board (Board) that affirmed a March 24, 2015 decision and order of a Workers' Compensation Judge (WCJ) awarding workers' compensation benefits to Jessica Ross (Claimant) as of April 12, 2013. In that decision, the WCJ (i) granted a reinstatement petition brought by Claimant against HealthSouth, where Claimant was employed from September 2008 until July 2009; (ii) dismissed a termination petition brought by HealthSouth; (iii) denied a reinstatement petition brought by Claimant against Mount Nittany Medical Center (Mt. Nittany), where she worked from February to June 2011; and (iv) granted a termination petition brought by Mt. Nittany. For the reasons that follow, we affirm the order of the Board.

This matter relates to a right foot injury that Claimant sustained on February 4, 2009 while working for HealthSouth as a part-time nurse's aide. As we stated in our previous opinion in this matter, *HealthSouth Rehabilitation Hospital of Altoona, LLC v. Workers' Compensation Appeal Board (Ross and Mt. Nittany Medical Center)*, (Pa. Cmwlth., No. 1690 C.D. 2015, filed July 19, 2016) (*HealthSouth I*),

> In February 2009, Claimant sustained an injury to her right foot while employed at HealthSouth, when a patient in a wheelchair rolled over her right foot. HealthSouth issued a medical-only Notice of Compensation Payable, recognizing the injury as a "right foot contusion resolved." Claimant treated with panel physicians for a period of ninety days following the injury, after which she sought treatment, on May 7, 2009, with Suzette Song, M.D., an orthopedic surgeon; throughout this period, Claimant was on sit-down duty, but she missed no time at work nor did she suffer any loss of wages. Claimant resigned from her position at HealthSouth at the end of July 2009 to attend nursing school, and following her graduation, in February 2011 she began working at Mt. Nittany [as a registered nurse]. During her three and one-half months at Mt. Nittany, Claimant worked 12-hour shifts that required constant standing and walking; continued pain and swelling in her right foot caused her to again seek treatment from Dr. Song in May 2011, and in June 2011 she resigned from Mt. Nittany to prepare to undergo fusion surgery, performed by Dr. Song, to her right foot.

*Id.*, slip op. at 2 (citations omitted). Furthermore, as we explained in *HealthSouth I*, this was not the first injury Claimant had sustained to her right foot:

> In 2005, while playing collegiate softball, Claimant was injured when she twice fouled a pitch off of her right foot; she received medical treatment at that time from Dr. Song, who performed two surgical procedures for her right foot condition. She returned to play collegiate softball in Spring 2006.

*Id.*, slip op. at 2-3 (citation omitted).

2

The petitions at issue in *HealthSouth I* related to Claimant's workers' compensation benefits for the period prior to August 9, 2012, the date that Dr. Song released Claimant after the 2011 surgery to full-duty employment without restrictions. Claimant initially filed a claim petition against HealthSouth seeking benefits as of July 8, 2011, the date of her surgery with Dr. Song, and later filed a joinder petition against Mt. Nittany, alleging that her work there was a substantial, contributing factor to her right foot condition. In a January 31, 2013 decision, WCJ Alfred Benedict granted the claim and joinder petitions, finding that Claimant's employment at HealthSouth and Mt. Nittany were both significant contributing factors to Claimant's current condition and directing HealthSouth and Mt. Nittany to pay indemnity benefits and medical benefits in equal amounts beginning on the date of injury. In addition, the WCJ denied a termination petition filed by HealthSouth, but suspended Claimant's benefits as of August 9, 2012.

On appeal, the Board initially issued an opinion and order modifying the award to provide that Mt. Nittany was 100% liable for any and all benefits due to Claimant from June 7, 2011, Claimant's last day of employment with Mt. Nittany, through August 9, 2012; reversing the WCJ's award of disability benefits prior to June 7, 2011; and affirming the determination that HealthSouth was liable for payments of medical benefits prior to June 7, 2011. However, following a motion for reconsideration filed by Mt. Nittany, the Board issued an opinion and order on August 26, 2015 vacating in part its earlier opinion and holding that HealthSouth, not Mt. Nittany, was liable for the payment of all of Claimant's workers' compensation benefits; modifying its earlier opinion and order to reverse the WCJ's determination that Claimant's employment with Mt. Nittany substantially contributed to her condition; and reaffirmed the remaining portions of its previous opinion and order. HealthSouth appealed, and we affirmed the

3

Board's revised opinion and order in *HealthSouth I*, holding that the testimony of Dr. Song, Claimant's expert, was competent and that neither the testimony of Dr. Song nor that of HealthSouth's expert, Paul Horenstein, M.D., provided unequivocal support for a finding that Claimant's employment with Mt. Nittany played a substantial, contributing role to her condition. Slip op. at 11-14.

In the current matter, Claimant filed reinstatement petitions seeking workers' compensation benefits from HealthSouth and Mt. Nittany from April 12, 2013 onward as a result of the worsening condition of her right foot, and HealthSouth and Mt. Nittany filed termination petitions alleging that Claimant had fully recovered from her right foot injury as of October 24, 2013. (Reproduced Record (R.R.) at 8a-9a, 14a-15a, 20a-21a, 24a-25a.) These petitions were consolidated before WCJ Pamela Briston. Claimant testified three times before WCJ Briston regarding the condition of her right foot, the out-patient surgical procedure on her right forefoot performed by Dr. Song on April 12, 2013 and a follow-up out-patient surgery on her right forefoot performed by Paul Juliano, M.D., on June 17, 2014. In addition, Claimant submitted the deposition testimony of Dr. Juliano, who is a Professor of Orthopedic Surgery at the Pennsylvania State University Hershey Medical Center specializing in foot and ankle surgery and board certified in orthopedic surgery. HealthSouth presented the deposition testimony of Dr. Horenstein, who performed a second independent medical examination (IME) of Claimant on October 24, 2013 and who, like Dr. Juliano, specializes in foot and ankle surgery and is board certified in orthopedic surgery.

On March 24, 2015, WCJ Briston issued a decision granting the reinstatement petition against HealthSouth as of April 12, 2013 and ongoing, denying the termination petition filed by HealthSouth and awarding Claimant temporary total disability payments in the amount of $310.36 per week with 10%

4

interest on the deferred compensation. (March 24, 2015 WCJ Decision, Finding of Fact (F.F.) ¶11, Conclusions of Law (C.L.) ¶¶1, 3, Order.) In addition, the WCJ dismissed the reinstatement petition filed by Claimant against Mt. Nittany and granted Mt. Nittany's termination petition. (*Id.*, C.L. ¶4, Order.) HealthSouth appealed, and the Board issued an opinion and order affirming the determination of the WCJ on August 26, 2015, the same day the Board issued its opinion and order in *HealthSouth I* concluding that HealthSouth, rather than Mt. Nittany, was liable for payment of Claimant's benefits through August 9, 2012. HealthSouth now petitions this Court for review of the Board's order.[1]

HealthSouth argues on appeal that the testimony of Dr. Juliano was not competent to support the grant of the reinstatement petition against HealthSouth. The issue of whether a medical expert's testimony is competent is a conclusion of law that is reviewable on appeal by this Court. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). Dr. Juliano testified that he first treated Claimant on April 17, 2014 after Dr. Song began experiencing serious health issues and transferred some of her patients to Dr. Juliano's care. (Juliano Dep. at 8-9, R.R. at 144a.) Dr. Juliano testified that Claimant informed him that she had continued to suffer pain in her right foot after the surgery performed by Dr. Song on April 12, 2013 and that she also experienced numbness, tingling and electric shock symptoms in her right big toe joint. (*Id.* at 11, R.R. at 145a.) Dr. Juliano performed an examination of her right foot that showed abnormal results consistent with her symptoms and

---

[1] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

diagnosed Claimant with metatarsalgia, or pain under the metatarsal head. (*Id.* at 12-14, 54, R.R. at 145a-146a, 156a.) Dr. Juliano performed surgery on June 17, 2014 consisting of an inspection of Dr. Song's tarso-metatarsal fusion surgery from July 2011, removal of hardware and re-drilling of bone mass in the site of the fusion surgery, arthroplasty and a DuVries condylectomy at the metatarsophalangeal joint in her right second toe and a revision of a bunionectomy of the right fifth toe. (*Id.* at 16-17, Ex. 2, Operative Report, R.R. at 146a, 215a-216a.) Dr. Juliano described the arthroplasty, condylectomy and bunionectomy to be "touch-up surgery" to the procedure performed by Dr. Song on April 12, 2013. (*Id.* at 28, R.R. at 149a.)

Dr. Juliano opined that the surgery performed by Dr. Song in April 2013 and his June 2014 surgery were both related to the February 2009 work incident. (*Id.* at 26-28, R.R. at 149a.) Dr. Juliano stated that even though Claimant's previous 2005 softball injury and February 2009 injury were both to her midfoot and the surgeries that Dr. Song performed in 2005 and 2011 both addressed issues in Claimant's midfoot, the forefoot issues that were addressed surgically in 2013 and 2014 were causally related to the previous midfoot injuries. (*Id.* at 27-28, 32, 38-39, 53-54, R.R. at 149a-150a, 152a, 155a-156a.) Dr. Juliano testified that as of his last treatment of Claimant in September 2014 he had recommended sedentary employment and that he would have advised the same restriction as of her first visit with him on April 17, 2014; further, Dr. Juliano stated that hypothetically if he had been Claimant's doctor as of April 12, 2013 and she had reported pain as of that date he would have recommended only sedentary employment for her from that date as well. (*Id.* at 22, 28-31, R.R. at 148a-150a.)

HealthSouth challenges the competency of Dr. Juliano's testimony on three grounds. First, HealthSouth argues that Dr. Juliano did not recognize in his

6

testimony the liability findings by WCJ Benedict in *HealthSouth I*, which at the time of Dr. Juliano's testimony had not yet been overturned by the Board. Specifically, HealthSouth contends that Dr. Juliano did not acknowledge the determination by WCJ Benedict that HealthSouth and Mt. Nittany were liable in equal amounts for Claimant's benefits and that Claimant's 2005 softball injury, the February 2009 wheelchair incident and Claimant's 2011 employment with Mt. Nittany all contributed equally to Claimant's condition.

We reject this argument. In the line of cases that HealthSouth cites, this Court found incompetent the testimony of an employer's expert who ignored the description of an injury established by a previous WCJ decision or notice of compensation payable.[2] In his testimony here, Dr. Juliano did not ignore the description of the nature of Claimant's right foot condition in the notice of compensation payable issued by HealthSouth in 2009 or the decision of WCJ Benedict. Furthermore, Dr. Juliano discussed at length the effects of Claimant's 2005 softball injury and Claimant's 2011 work at Mt. Nittany on her current condition during his deposition. Dr. Juliano explained that he believed that the 2005 softball injury played a role in Claimant's future medical issues, including the April 2013 and July 2014 surgeries, because of weakened tissue in the midfoot, but

---

[2] *See, e.g., Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 218-19 (Pa. Cmwlth. 2008) (holding that employer's medical expert's testimony was legally insufficient to support a termination petition where expert refused to acknowledge the judicially determined work injury of a herniated L-5 disc and lumbar radiculopathy and instead denied a herniation and described the injury as a back strain); *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 995-96 (Pa. Cmwlth. 2005) (*en banc*) (holding that testimony by employer's medical expert was not competent to support a termination of benefits where expert testified that the claimant had only suffered a lumbar strain and sprain and had only recovered from the strain and sprain despite the fact that it had been established in an earlier WCJ decision that claimant had suffered from chronic sciatica and disc bulging at the L5-S1 level).

did not fully warrant her later surgeries because she played softball for several years afterwards and her condition was favorable until the February 2009 incident. (Juliano Dep. at 34-35, R.R. at 151a.) Regarding Claimant's 2011 work with Mt. Nittany, while Dr. Juliano testified that he did not believe that Claimant's 12-hour shifts with Mt. Nittany caused the need for Claimant's April 2013 and July 2014 surgeries and he hesitated to say that Claimant suffered an "aggravation" of her earlier injury while at Mt. Nittany,[3] he also stated the 12-hour shifts caused Claimant pain and made her symptoms worse. (*Id.* at 34, 50-51, 59-64, R.R. at 151a, 155a, 157a-158a.) This testimony was remarkably consistent with the testimony of Dr. Song in the earlier proceeding that the long shifts at Mt. Nittany were "really aggravating her symptoms," which WCJ Benedict found to support his determination that Mt. Nittany should share in the liability for Claimant's benefits. (Jan 31, 2013 WCJ Decision, F.F. ¶1, R.R. at 139a.)

HealthSouth's second ground for contending that Dr. Juliano's testimony was not competent is that his testimony regarding the causal link between the February 2009 work injury and Claimant's treatment after April 12, 2013 was equivocal. We disagree. Competency, when applied to medical evidence, requires that the expert witness's opinion be sufficiently definite and

---

[3] When initially asked whether Claimant's 2011 employment with Mt. Nittany played any part in the need for her 2011, 2013 and 2014 surgeries, Dr. Juliano stated that "upon review of the records the patient appeared to have pain prior to employment [with Mt. Nittany] and more than likely was exacerbated or aggravated during that, but not caused by it." (Juliano Dep. at 34, R.R. at 151a.) He later clarified:

> [I]t appears she had the problem when she started working at Mount Nittany and being on your feet would be – I don't want to use the word aggravation – I know I did earlier and I know that's a Workmen's Comp term – but it made symptoms worse as a result of the work injury, but I didn't think it caused it.

(*Id.* at 50, R.R. at 155a.)

unequivocal to render it admissible.  *Pryor*, 923 A.2d at 1203; *Cerro Metal Products Co. v. Workers' Compensation Appeal Board (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004).  A medical expert's testimony is unequivocal as long as the expert, after providing a foundation, testifies that in her professional opinion she believes or thinks the facts exist.  *Pryor*, 923 A.2d at 1203; *Cerro Metal Products*, 855 A.2d at 937.

Dr. Juliano cogently explained at multiple points during his deposition testimony that, while Dr. Song's April 2013 surgery was on the forefoot and the earlier injuries and treatment were on Claimant's midfoot, the April 2013 surgery was nonetheless related to the earlier injuries because:

> the midfoot is connected to the forefoot, and an injury of the midfoot will transmit to the forefoot, so if there is a weakness of the midfoot, especially the Lisfranc area, the arch can collapse or you can just get problems with the first metatarsal and develop symptoms, whether it's actually arthritis or arthrosis.

(Juliano Dep. at 27, R.R. at 149a; *see also id*. at 38-39, 53-54, R.R. at 152a, 155a-156a.)  When asked for his response to Dr. Horenstein's opinion that Dr. Song's April 2013 surgery was unrelated to earlier injuries because they were on different parts of the foot, Dr. Juliano stated that he disagreed with this opinion

> [b]ecause what I alluded to a little bit earlier is that the midfoot is connected to the forefoot and the forces of the first metatarsal transfer to the great toe and the second at the midfoot arch.
>
> The midfoot is the keystone of the foot. The foot has a longitudinal arch and transverse arch and injuries to the midfoot, the keystone, goes down and transmits the forces to the forefoot. And the surgery that was performed was predominantly on the forefoot.

(*Id.* at 32, R.R. at 150a.)  Dr. Juliano said that, because the surgery he performed in July 2014 was "touch-up surgery" on Dr. Song's April 2013 surgery and Dr.

Song's earlier surgery was related to the February 2009 workplace incident in which a wheelchair ran over Claimant's foot, it "logic[ally] follows" that his surgery was also related to that incident. (*Id.* at 28, R.R. at 149a.) We conclude that this testimony that Claimant's 2013 and 2014 treatment resulted from Claimant's 2009 work injury was not equivocal.[4]

HealthSouth's finally argues that Dr. Juliano's testimony was not competent to support an award of workers' compensation benefits from April 12, 2013 and ongoing when Dr. Juliano did not begin treating her until April 17, 2014. HealthSouth contends that Dr. Juliano's statement that he would have placed Claimant on sedentary duty restriction *if* he had begun treating Claimant on April 12, 2013 is not legally sufficient to support an award from that date. HealthSouth therefore asserts that because there was no competent medical evidence regarding the period from April 12, 2013 until April 17, 2014, Dr. Juliano's testimony would at most be competent to support an award from this later date.

This argument misinterprets the burden in a proceeding relating to the reinstatement of workers' compensation benefits. In a reinstatement petition, a claimant must show (i) that her earning power is once again adversely affected by her work injury; and (ii) that the disability that gave rise to her original claim continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 642 A.2d 1083, 1084 (Pa. 1994); *Dougherty v. Workers' Compensation Appeal Board (QVC, Inc.),* 102 A.3d 591, 595 (Pa. Cmwlth. 2014). Because of the

---

[4] Dr. Juliano acknowledged that one aspect of Dr. Song's April 2013 surgery – the plantar fifth metatarsal condylectomy in which Dr. Song removed a bump on Claimant's fifth toe – did not arise from earlier injury to her mid-foot and therefore was not work related. (Juliano Dep. at 45-46, R.R. at 153a-154a.) HealthSouth, however, did not challenge WCJ Briston's award of medical expense related to this portion of the April 2013 surgery or the expenses related to the portion of Dr. Juliano's July 2014 surgery that also addressed the fifth toe.

nature of a suspension of benefits, which acknowledges a continuing medical injury and suspends benefits only because the claimant's earning power is currently not affected, expert medical testimony that the disability continues is not required and the claimant may satisfy this element through her own testimony. *Latta,* 642 A.2d at 1084-85; *Dougherty,* 102 A.3d at 595. Claimant testified before the WCJ that her right foot was never pain free after the 2011 fusion surgery and that she returned to see Dr. Song in February 2013, which led to the April 2013 surgery. (Aug. 21, 2013 Hearing Transcript (H.T.) at 18-19, 28, 33-35, R.R. at 45a-46a, 55a, 60a-62a.) Claimant further testified that the April 2013 surgery did not lessen her pain and through her visit with Dr. Juliano in April 2014 she continued having pain and numbness in her right foot and could not wear an enclosed shoe for more than one half hour straight. (Aug. 21, 2013 H.T. at 19-20, R.R. at 46a-47a; March 12, 2014 H.T. at 7-8, R.R. at 82a.) WCJ Briston found that Claimant's testimony was credible generally and specifically noted that she accepted Claimant's testimony as credible that she continued to have problems related to her right foot injury. (March 24, 2015 WCJ Decision, F.F. ¶10(a).) In light of this credible testimony of pain and other issues with her right foot before and after the April 2013 surgery, we conclude that WCJ Briston did not err in awarding a reinstatement of Claimant's benefits from April 12, 2013 onward.

HealthSouth next argues that WCJ Briston erred by not adhering to the finding by WCJ Benedict that Claimant sustained a workplace injury at Mt. Nittany in 2011 in addition to the 2009 HealthSouth injury and the equal apportionment by WCJ Benedict of liability between HealthSouth and Mt. Nittany. In her decision, WCJ Briston recognized WCJ Benedict's contrary findings but nonetheless held that her decision related to a different time period:

> Judge Benedict's decision of January 31, 2013, granted the claimant's claim petition and found both of the defendants to be

11

equally responsible for the payment of the claimant's indemnity and medical benefits. Judge Benedict suspended the claimant's wage benefits effective August 9, 2012. This decision does not address any of the issues involved in the litigation that was before Judge Benedict or issues involving causation. This decision addresses the status of the claimant's workers' compensation benefits as of April 12, 2013.

(March 24, 2015 WCJ Decision, F.F. ¶8 (footnote omitted).) HealthSouth contends that WCJ Briston was not permitted to divert from WCJ Benedict's judicially established determination of injury and liability, which had not been overturned and was binding at the time of WCJ Briston's decision, citing the doctrines of the "law of the case" and *res judicata*.[5] In addition, HealthSouth argues that WCJ Briston erred by not dismissing the reinstatement petitions while the appeal of WCJ Benedict's determination was pending, citing the rule established in *Bechtel Power Corp. v. Workmen's Compensation Appeal Board (Miller)*, 452 A.2d 286 (Pa. Cmwlth. 1982), that a party in a workers' compensation proceeding may not file a petition that addresses the same issues raised in an earlier proceeding while the earlier case is still under appeal.

We conclude that, even if WCJ Briston erred in not following WCJ Benedict's earlier findings or dismissing the reinstatement petition until the appeal was resolved in *HealthSouth I*, any error would be harmless. Subsequent to WCJ Briston's decision here, the Board reversed WCJ Benedict's finding that Claimant

---

[5] *Res judicata* encompasses the two related, yet distinct, principles of collateral estoppel, which acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment, and technical *res judicata*, which provides that following a final judgment on the merits, a future suit on the same cause of action between the same parties is precluded. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman),* 39 A.3d 1028, 1034 (Pa. Cmwlth. 2012). The doctrine of the law of the case "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995).

12

suffered a work injury while employed at Mt. Nittany and found HealthSouth entirely liable for payment of Claimant's workers' compensation benefits prior to August 9, 2012. HealthSouth appealed that determination and we affirmed the Board in *HealthSouth I*. WCJ Briston's findings here that HealthSouth is liable for Claimant's benefits for the period of April 12, 2013 and ongoing were affirmed by the Board and are entirely consistent with the Board's and our opinion in *HealthSouth I*. HealthSouth thus seeks for this Court to reject the determination of workers' compensation liability in the case presently before us based on a decision that has now been overturned and no longer has any legal effect. To do as HealthSouth argues and reverse or vacate WCJ Briston's findings to the extent they diverged with those of WCJ Benedict would result in the absurd scenario where HealthSouth would then be estopped in future proceedings from arguing that Claimant's Mt. Nittany employment was a significant, contributing factor to her current condition and would only serve to generate additional, duplicative litigation, something that the law of the case, *res judicata* and the rule established in *Bechtel Power* serve to avoid. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (providing that the objective of the law of the case doctrine is, in part, "to promote the goal of judicial economy"); *Knox v. Pennsylvania Board of Probation and Parole*, 588 A.2d 79, 82 (Pa. Cmwlth. 1991) (stating that the purposes of the doctrine of *res judicata* is, in part, to protect judicial resources and protect parties from vexatious litigation); *Bechtel Power*, 452 A.2d at 288 (holding that the "evil avoided" by dismissing a petition that attempted to relitigate an identical issue that is still under appeal in an earlier case is "the unnecessary and counter-productive relitigation of identical issues").

HealthSouth's final argument on appeal is that WCJ Briston abused her discretion by allowing Claimant statutory interest on the workers'

compensation benefits in light of the delay of one year and four months from the date she filed her reinstatement petition to the date she deposed her medical expert, Dr. Juliano. Section 406.1(a) of the Workers' Compensation Act (Act)[6] provides that "[i]nterest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum." Section 406.1(a) of the Act, added by the Act of Feb. 8, 1972, P.L. 25, *as amended*, 77 P.S. § 717.1(a). Though the payment of interest is mandatory under this provision, pursuant to Section 435(d)(3) of the Act, "[c]laimants shall forfeit any interest that would normally be payable to them with respect to any period of unexcused delay which they have caused." Section 435(d)(iii) of the Act, added by the Act of Feb. 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(iii). The requirement of forfeiture for unreasonable delay falls under the penalty provisions of the Act, and the question of whether a WCJ can issue a penalty on a party is discretionary and will not be overturned absent an abuse of her discretion. *Farance v. Workers' Compensation Appeal Board (Marino Brothers, Inc.)*, 774 A.2d 785, 789 (Pa. Cmwlth. 2001). Our case law demonstrates great deference for a WCJ's determination of whether a delay occurred and if it was attributable to a claimant, whether that delay was excused and to what period the forfeiture of interest should apply. *See Johnakin v. Workers' Compensation Appeal Board (City of Philadelphia)*, 806 A.2d 950, 952-53 (Pa. Cmwlth. 2002); *Miller v. Workmen's Compensation Appeal Board (Fischbach & Moore)*, 590 A.2d 1325, 1326-27 (Pa. Cmwlth. 1991); *Scheffer v. Workmen's Compensation Appeal Board (San Juan Credit Furniture)*, 463 A.2d 96, 99 (Pa. Cmwlth. 1983).

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

Claimant filed her reinstatement petition against HealthSouth on May 31, 2013, alleging a resumption of disability as of the date of her surgery with Dr. Song, April 12, 2013. At the first two hearings held before WCJ Briston on August 21, 2013 and November 20, 2013, counsel for Claimant indicated that she would be relying on Dr. Song as her expert. (Aug. 21, 2013 H.T. at 39, R.R. at 66a; Nov. 20, 2013 H.T. at 6, R.R. at 75a.) The parties also agreed to hold a mediation session before an independent WCJ to take place after the October 24, 2013 IME by Dr. Horenstein, and WCJ Briston informed the parties that they should wait to schedule the depositions of their experts until after the mediation. (Aug. 21, 2013 H.T. at 40-41, R.R. at 67a-68a; Nov. 20, 2013 H.T. at 6-8, R.R. at 75a-77a.) It was not until the first hearing after the mediation, held on March 4, 2014, that Claimant's counsel informed WCJ Briston of Dr. Song's serious medical problems that would necessitate locating a new expert. (March 4, 2014 H.T. at 16-17, 20, R.R. at 84a-85a.) Claimant's first appointment with Dr. Juliano was on April 17, 2014, and the surgery by Dr. Juliano took place on June 17, 2014. A final hearing was held in this matter on September 4, 2013 for Claimant's testimony regarding her treatment with Dr. Juliano, and Dr. Juliano was deposed on October 31, 2014.

Because HealthSouth did not file a penalty petition seeking forfeiture of interest, WCJ Briston did not address the issue of whether Claimant had inexcusably delayed the proceedings.[7] However, based upon our review of the chronology of the proceedings, we cannot say that WCJ Briston abused her

---

[7] Though HealthSouth did not file a separate petition challenging Claimant's entitlement to statutory insurance, counsel for HealthSouth did raise the issue at a hearing before WCJ Briston and in the appeal to the Board. (March 4, 2014 H.T. at 21, R.R. at 85a; Apr. 9, 2015 Appeal to Board, R.R. at 284a.)

discretion in not ordering a forfeiture. The primary reasons for the delay in obtaining Dr. Juliano's deposition were, in the first instance, the mediation process that all parties agreed to participate in, and secondly, the illness of Dr. Song that required Claimant to find a new doctor and expert. Neither of these reasons were attributable to Claimant. While Claimant's counsel could have potentially deposed Dr. Juliano sooner than approximately six months after the date of her first appointment with him, it would also appear reasonable to wait until after his surgery and follow-up appointments with Claimant.

HealthSouth argues that Claimant far exceeded the provision in the Special Rules of Administrative Practice and Procedure for workers' compensation proceedings requiring depositions of medical experts to be taken within 90 days of the first hearing. 34 Pa. Code § 131.63(c). However, this time period may be extended by the WCJ for good cause, *id.*; *see also* 34 Pa. Code § 131.3(a) ("The judge may, for good cause, waive or modify a provision of this chapter...upon motion of a party, agreement of all parties or upon the judge's own motion."), and the mediation and illness of Dr. Song could satisfy the requirement of good cause. HealthSouth also argues that it should not be penalized by paying the additional interest for the one year and four month period when it was not in any way responsible for the delay. This argument, however, ignores the purpose of the mandatory interest requirement set forth in Section 406.1(a) of the Act. The payment of mandatory interest under Section 406.1(a) is not based on the fault of the employer but instead is intended to compensate a claimant for the loss of the use of the money during the time the payment was delayed. *Tobler v. Workers' Compensation Appeal Board (Verizon Pennsylvania, Inc.)*, 120 A.3d 448, 450 (Pa. Cmwlth. 2015); *Cleveland Brothers v. Workers' Compensation Appeal Board (Hazlett)*, 57 A.3d 199, 203 (Pa. Cmwlth. 2012).

16

Accordingly, the order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

HealthSouth Rehabilitation Hospital : 
of Altoona, LLC, :
          Petitioner :
           :
          v. : No. 1687 C.D. 2015
           :
Workers' Compensation Appeal :
Board (Ross and Mount Nittany :
Medical Center), :
          Respondents :

# **O R D E R**

AND NOW, this 2nd day of September, 2016, it is hereby ORDERED that the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge